# Richmond.

## I. C. ROYALS v. COMMONWEALTH.

### January 14, 1926.

1. INTOXICATING LIQUORS—*Indictment—Omnibus Form—General Demurrer.*—The indictment in the instant case, a prosecution for violation of the prohibition law, was in the omnibus form, and specifically alleged the offense for which the defendant was convicted. The accused demurred to the indictment without stating the grounds of his demurrer.

   *Held:* That the ruling of the trial court sustaining the indictment was clearly correct.

2. INTOXICATING LIQUORS—*Indictments—Bill of Particulars—Election—Case at Bar.*—There is a distinction between an election upon the part of the attorney for the Commonwealth and the furnishing of a bill of particulars. In the instant case, a prosecution for violating the prohibition act, no bill of particulars was requested, but the Commonwealth did elect, without objection, to try the defendant upon the charge of unlawfully having ardent spirits in his possession. This election manifestly had reference to the charge in the indictment, which was in the omnibus form, and sufficiently put the defendant upon notice as to the criminal charge he was to meet.

3. INTOXICATING LIQUORS—*Unlawfully Having Ardent Spirits in Possession—Evidence—Case at Bar.*—In the instant case, a prosecution for violation of the prohibition act, the officers who made a search of defendant's premises, testified that they found a still near the defendant's land and found what they termed apple mash upon the premises of defendant. The Commonwealth had elected to prosecute only upon charge of unlawful possession of ardent spirits by the accused, and not for the possession by him of a still or mash.

   *Held:* That while accused could not be convicted of having a still or mash in his possession, this evidence was admissible for the purpose of showing the intent with which the defendant possessed the ardent spirits, if he, in fact, did so possess the same.

4. CRIMINAL LAW—*Evidence Sufficient to Support Conviction—Circumstances of Suspicion.*—Circumstances of suspicion, however strong or grave, are not sufficient to justify a verdict of guilty.

5. INTOXICATING LIQUORS—*Unlawful Storing—Stored on Premises not Belonging to Accused.*—Whenever a person is charged with unlawfully

storing ardent spirits, which were stored on property other than that which the accused owns or had control over, the Commonwealth must prove beyond a reasonable doubt that the accused was the owner of the ardent spirits so stored, or had an interest therein.

6. Intoxicating Liquors—*Unlawful Possession—Presumption where Liquor is not Stored on Premises of Accused.*—In a prosecution for unlawful possession of ardent spirits, there is no presumption against the accused of having an interest in, or that he owned, ardent spirits, which were stored on property on which he did not own or control, however near the ardent spirits might be to his property.

7. Criminal Law—*Presumption of Innocence.*—It is elementary that the accused must be presumed to be innocent until his guilt is proven beyond a reasonable doubt.

8. Intoxicating Liquors—*Prima Facie Presumption from Possession—Liquor Found on Property of Accused—Case at Bar.*—It was manifest from the evidence that defendant in the instant case was neither the owner nor the occupier of the premises upon which the contraband liquor was found. This being true, there was not even a *prima facie* presumption that he was guilty of the unlawful keeping or having in his possession the liquor found by the officers upon the property of another.

9. Intoxicating Liquors—*Unlawful Possession—Evidence—Case at Bar.*— In the instant case, a prosecution for the unlawful possession of ardent spirits, the fact that the defendant was the owner of cider or apple mash which was in close proximity to the ardent spirits found by the officers, on the land of another, while a suspicious circumstance, is not of itself sufficient proof upon which to found a verdict of guilty. The burden was upon the Commonwealth to connect the accused, by clear and positive proof, with the possession of the liquor.

10. Intoxicating Liquor—*Unlawful Possession—Evidence Sufficient to Support Conviction—Case at Bar.*—In the instant case officers, who had a warrant to search accused's premises, found what they termed apple mash and grape wine on the premises of accused. On adjacent property, not belonging to accused, they found a still and some corn whiskey or apple brandy. Near the place where the still and liquor was found there was a path used by a great many people. The evidence established a good reputation for accused for truthfulness and observance of the law. The accused testified that the apple-mash was only sweet cider which was standing until it developed into vinegar, and that the wine was made from his own grapes.

*Held:* That the evidence was not sufficient to support a conviction for unlawful possession.

**Error to a judgment of the Circuit Court of Norfolk county.**

*Reversed.*

The opinion states the case.

*W. L. Devany, Jr.,* for the plaintiff in error.

*John R. Saunders, Attorney General, Leon M. Bazile,* and *Lewis H. Machen, Assistant Attorneys General* for the Commonwealth.

CAMPBELL, J., delivered the opinion of the court.

[1] The accused was tried and convicted upon an indictment which charged the offense in the following language: "That I. C. Royals, heretofore, to-wit, within one year next prior to the finding of this indictment and after the 16th day of June, 1924, in the said county of Norfolk, did unlawfully sell, keep, store and expose for sale, give away, transport, dispense, solicit, advertise and receive orders for ardent spirits against the peace and dignity of the Commonwealth."

The defendant demurred to the indictment without stating the grounds of his demurrer.

The ruling of the trial court upon the general demurrer was clearly correct. The indictment strictly conforms to the statute and specifically alleges the offense for which the defendant was convicted.

The following assignments of error are also relied upon:

(1) Insufficiency of bill of particulars.

(2) Wrongful admission of evidence.

(3) The verdict was contrary to the law and the evidence.

(1) There is no merit in this assignment. The indictment upon which the defendant was tried was the "omnibus indictment," which, among other offenses, charged that he did unlawfully keep and store for sale, ardent spirits.

The order of the trial court shows: "And on motion of the defendant, the attorney for the Commonwealth is required to elect upon which charge of the indictment he would rely; and the attorney for the Commonwealth elected to rely upon the charge of unlawfully having ardent spirits in his possession." There is a distinction between an election upon the part of the attorney for the Commonwealth and the furnishing of a bill of particulars, as required under the decisions of this court.

[2] In the instant case no bill of particulars was requested, but the Commonwealth did elect, without objection, to try the defendant upon the charge of unlawfully having ardent spirits in his possession. This election manifestly had reference to the charge in the indictment and sufficiently put the defendant upon notice as to the criminal charge he was to meet.

[3] (2) It is contended for the accused that prejudicial error was committed by the trial court in permitting the officers who made the search of the defendant's premises to testify that they found a still near the defendant's land and found what they termed apple mash upon the premises of the defendant.

The gist of the contention is that the admission of this evidence was erroneous, for the reason that the Commonwealth had elected to prosecute only upon the charge of unlawful possession of ardent spirits, and not that he was the possessor of a still or mash.

While it is true that the Commonwealth was bound by her election, and the defendant could not be convicted of having a still or mash in his possession under this indictment, the evidence was admissible for the purpose of showing the intent with which the defendant possessed the ardent spirits, if he, in fact, did so possess the same.

(3) The last error assigned is that the verdict is unsupported by the evidence, and that the court erred in refusing to set it aside.

The evidence upon which the Commonwealth relies to sustain the verdict is as follows:

County officers Rountree, Brown and Casteen testified that they went to the defendant's house, who is a farmer in Norfolk county, with a search warrant to search for violation of the prohibition law. Upon their arrival they found the accused absent and made known the purpose of their visit to Mrs. Royals, who requested that they wait before executing the warrant until the return of her husband. They waited a short while, but before the accused returned officers Brown and Rountree searched the outhouses and land adjoining the property of the accused. In the smokehouses in the yard of the accused they found five gallons of grape wine; in an open outhouse next to the fence two barrels of apple mash; about twenty-five feet from the house containing mash, across a ditch and outside of the fence, they found two jugs in holes in the ground, with an old piece of sheet iron and trash over them, containing approximately seven gallons of corn whiskey or apply brandy; a dismantled still in a hole covered over with sheet iron and trash; that near the whiskey and still there were six to ten bee hives, the property of the defendant, and there was a path running from the defendant's back gate to the canal which passed near the bee hives. There was also a small cider press standing in the yard of the defendant; that the still-cap had apple pumice on the mouth of it.

Officer Brown corroborated the above evidence with the exception that the so-called apple mash was a liquid with some pieces of apple floating on the top.

No liquor was found on the premises and the officers further testified that the accused denied knowledge of the liquor and still, but claimed the wine as having been made on his premises of grapes grown in his vineyard and claimed that the mash of cider found in the two barrels was apple cider made from apples out of his orchard and was to be kept until it developed into cider vinegar. The still and liquor were from ten to fifteen feet from the ditch, and between the ditch and canal. There was a footpath along the canal and otherwise the property of the canal company was not used.

Upon the part of the defendant, the record shows that the following witnesses testified in his behalf:

Mr. Lash, president of the Tidewater Bank of Portsmouth, testified to the good character and good reputation of the accused and as to his good reputation for truth and veracity.

Mr. T. B. Johnson, a farmer who lived on the farm adjoining the defendant, testified that he had seen two negroes with five gallons of whiskey walking along the path of the canal, and also testified as to the good character of the accused and as to his good reputation for truth and veracity, as did W. H. C. Deal and J. E. McCarter, also farmers living close to the farm of the defendant. T. B. Johnson testified that the ditch was the line between the accused's property and the Dismal Swamp Canal Company's property.

Mrs. Whittaker, a resident of Portsmouth, testified that she had been going to the house of the accused from two to three times a week for the purpose of purchasing eggs, chickens, etc., and that he was a hard working man with a wife and several children to support; that she had never seen anything to indicate that he was dealing in ardent spirits and his reputation for truth and veracity and observance of the law was excellent.

It was also testified by witnesses for the Common-wealth and the defendant that there was a path running down the canal between it and the house of the accused which was used by people frequently.

Mrs. Royals, wife of the accused, testified that where the whiskey was found was not on the property of her husband, but on the property of the Dismal Swamp Canal Company; that they had from time to time used their influence to keep moonshiners from setting up stills near their home, and even in August, 1924, she had complained to the judge of the circuit court and asked that officers be sent down to drive off bootleggers from the neighborhood of their home; that she and her husband had made the wine testified to by the officers from grapes out of their vineyard, and that they were making some cider vinegar for Mr. Moore, a merchant who operates a store at Gilmerton, and that the apples came out of their orchard, and that the accused had no interest in the liquor found or the still.

The defendant testified that he was away from home when the officers came, and when he returned the liquor was in his yard, having been taken there by the officers. He denied all knowledge or ownership thereof. He admitted making wine from grapes; also the cider which was for vinegar for Mr. Moore. That a short time before this he had purchased apples for the purpose of making cider vinegar, but had heard that he could not do so, and had gone to see Mr. Johnson, a neighbor, to find out if he could do so, but he was told he could not and he fed the apples to his hogs; that the so-called apple mash was only sweet cider which was standing until it developed into vinegar; that the way to make vinegar was to grind the apples, squeeze out the juice and leave the juice to ferment,

which would in due course of time turn into vinegar; that he had never made any apple brandy and did not know how to do it; that there was a path running down the canal back of his farm and about thirty feet from his line which was used by a great many people; and a short way from his home, several months before, he had found a still in operation on the canal bank and he had posted a notice on the still that unless they moved same he would report it to the officers; that he had never been in any trouble and he bore a good reputation, and he asked the officers to carry the still out at night because he did not want the neighbors to think he was in the liquor business; that the whiskey and still were found on the premises of the Dismal Swamp Canal Company, and that he had no control over the property of the Dismal Swamp Canal Company.

The law of the case is correctly embodied in the instructions given by the trial court:

[4] "The court instructs the jury that circumstances of suspicion, however strong or grave, are not sufficient to justify a verdict of guilty.

[5] "The court instructs the jury that whenever a person is charged with unlawfully storing ardent spirits, which ardent spirits were stored on property other than that which the accused owns or had control over, the Commonwealth must prove beyond a reasonable doubt that the accused was the owner of the ardent spirits so stored, or had an interest therein.

[6] "The court further instructs the jury that there is no presumption against the accused of having an interest in, or that he owned ardent spirits, which were stored on property which he did not own or control, however near the ardent spirits might be to his property."

There is a marked difference between the case at bar and the multitude of liquor cases which come to this court, in that the defendant, instead of having to carry the handicap of "a bad reputation as a violator of the prohibition law," is presented in the record by the president of the Tidewater Bank of Portsmouth and others as a person of good character and possessing an excellent reputation for truthfulness, as well as that of a law observer.

[7] It is elementary that the accused must be presumed to be innocent until his guilt is proven beyond a reasonable doubt.

[8] It is made manifest by the evidence recited that the defendant is neither the owner nor the occupier of the premises upon which the contraband liquor was found. This being true, there is not even a *prima facie* presumption that he was guilty of the unlawful keeping or having in his possession the liquor found by the officers upon the property of the Dismal Swamp Canal Company.

In *Hilton's Case*, 136 Va. 721, 117 S. E. 840, Judge Prentis said: "The evidence in this case fails to show that the accused was either the occupant of the premises or that he was in charge of the premises at the time the whiskey was found thereon, and hence there is no *prima facie* presumption of his guilt."

[9] The fact that the defendant was the owner of cider or apple mash which was in close proximity to the ardent spirits found by the officers, while a suspicious circumstance, is not of itself sufficient proof upon which to found a verdict of guilty. The burden was upon the Commonwealth to connect the accused, by clear and positive proof, with the possession of the liquor. This, in our opinion, the Commonwealth has failed to do.

[10] For the error committed by the trial court in refusing to set aside the verdict of the jury, the case must be reversed and remanded for a new trial, if the Commonwealth shall be so advised.

*Reversed.*