# Richmond

JAMES THOMAS v. COMMONWEALTH OF VIRGINIA.

March 1, 1948.

Record No. 3248.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*P. A. L. Smith, Jr.,* for the plaintiff in error.

*Abram P. Staples, Attorney General, Harvey B. Apperson, Attorney General, M. Ray Doubles, Assistant Attorney General,* and *Ballard Baker,* for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

This case was argued and submitted to this court at the June, 1947, session in Richmond, and the opinion of the majority prepared and handed down by Mr. Justice Hudgins, now Chief Justice, at the October, 1947, session of the court. (See *Thomas* v. *Commonwealth*, 186 Va. 814, 44 S. E. (2d) 365). Thereafter, James Thomas, the defendant, filed his petition for a rehearing. After mature consideration, it was deemed best, in view of the gravity of the crime charged against the defendant and the peculiar circumstances of the case, that a rehearing be granted. The case was reheard at the January, 1948, session of the court at Richmond.

The defendant was tried in the Circuit Court of Goochland county for the murder of Mattie Hall, found guilty, and his punishment fixed at life imprisonment.

The evidence is rather fully set out in the majority and minority opinions, handed down October 13, 1947. It will be necessary to recite again only that which is most material.

The defendant is an illiterate young negro man, about 22 years of age. He was born and lived all of his life in Goochland county. He was raised by his aunt, Mattie Hall, and lived with her at her home in that county. Mattie Hall was about 45 years of age. She was fond of fishing and often indulged in that pastime in a creek near Irwin, a railroad station in Goochland county.

On the afternoon of Monday, March 4, 1946, James Thomas and Mattie Hall drove in an automobile from their home to Irwin, and thence westwardly towards a point near the creek where the woman desired to go fishing. Thomas said that upon reaching their destination, the woman got out of the car at the edge of the road about fifty yards from the creek, and proceeded to the creek, and that he never saw her thereafter.

Mattie Hall owned the automobile and her nephew helped her maintain it, paying the premium for insurance on it a few days before March 4th. Each kept a set of duplicate keys and Thomas was permitted to use it at will.

They had never had any dispute over the automobile nor any quarrel about other matters.

On the above mentioned day, the defendant was driving the car. In about forty-five minutes after he was seen to drive past Irwin, he was seen to return from the direction of the creek alone. He stopped at Irwin, drew a bucket of water from a well, drank some of it, got back into the car, and drove, unhurriedly, towards his home.

The station agent at Irwin, Mr. H. D. Ragland, saw him both times he passed by the station. He testified that Thomas did not appear to be excited.

The defendant worked in Richmond as a laborer at his usual occupation on Tuesday and Wednesday, March 5th and 6th. On Wednesday night he returned to his home after receiving a letter from a member of the family that Mattie Hall had not returned home.

On Thursday morning he met the deputy sheriff of the county and a searching party looking for Mattie Hall. He was questioned in detail and made certain statements as to where he had left Mattie Hall on March 4th.

The body of Mattie Hall was later that day found in the creek one mile west of Irwin. Her skull had been fractured and there was some bleeding from a stab wound on her throat severing the jugular vein. The body was found in the stream about eight feet from the bank, the water at that point being about ten feet deep. A fishing pole was sticking up, its butt end floating about two feet out of the water. The hook at the end of its line of thread was fastened to Mattie's sweater.

The coroner of the county was of the opinion that death was not caused from drowning but from a skull fracture. He was unable, however, to determine the time of her death from the condition of the body.

The defendant was again questioned by the deputy sheriff as to how Mattie Hall got to the place where her body was found. Because Thomas then made some statements apparently in conflict with his former statement

and with other information given the deputy sheriff, he was arrested and charged with the murder of Mattie.

The defendant told the deputy sheriff that he had given Mattie Hall $50 while they were driving along the road on Monday afternoon, March 4th, so that she could go to New York to secure work, and that she put the money in her left hip pocket. Under an agreement with her, he was to have the use of her car while she was in New York. No money was found upon the body of Mattie Hall. The deputy sheriff thought that the defendant showed more anxiety about the failure to find the $50 than he did about his aunt.

Upon his trial, Thomas stoutly maintained his innocence. He said that he had purchased and given to Mattie Hall some whiskey, and because she did not want Shadrack Lynch to know she had this whiskey, he had first made a statement that he had left her at a point different from where she had gotten out of her car on the road; that, as a matter of fact, he did not go to the creek; that after making some repairs on the car, he had returned home; and that he did not know how she had come to her death.

Mrs. H. D. Ragland, the wife of the station agent at Irwin, a reputable and wholly disinterested witness, testified that she had known Mattie Hall about twenty-five years; that on Tuesday, March 5th, between 12:00 noon and 2:00 p. m., from a distance of thirty feet she saw Mattie Hall driving a car towards the creek, and spoke to her; that Mattie Hall waved to her as she usually did in passing by the station; that a man was in the car and the man was not the defendant; that she did not see Mattie Hall return; and that she thought it Mattie Hall's car because she was driving it. She further stated that she remembered the date because her husband was attending a board of supervisors meeting, and she was in charge of the post office at Irwin Station during his absence.

In each of the opinions handed down October 13, 1947, comment is made upon the testimony of two twelve-year old negro witnesses and several other negro residents of

the county relative to the conduct and behavior of the defendant on March 4, 1946, and thereafter. The character of this testimony is not impressive. Some of it is in conflict with that of Mr. Ragland, especially with regard to the personal appearance of the defendant on March 4th, after he parted company with his aunt. At most it affords only a basis for inferences, but not a necessary inference that the defendant committed the crime of murder.

The relations between the defendant and Mattie Hall were shown to be of the most friendly nature, both by the evidence of witnesses and by a letter written by the defendant to his mother prior to the death of his aunt. Mattie Hall had practically taken the place of the real mother of the defendant in raising and taking care of him. There was no cause shown for him to desire her death or to expect to receive a benefit therefrom. Besides he established a good reputation. All of this is antagonistic to any inference that he was guilty of the brutal crime of murdering his aunt.

The theory of the prosecution is based on the contentions that Mattie Hall was killed on Monday afternoon, March 4, 1946; that James Thomas was the last person seen with her; that he had an opportunity to commit the crime; and that his subsequent behavior was indicative of his guilt.

We cannot agree that the evidence establishes either of these contentions beyond all reasonable doubt. There is no proof of the time when Mattie Hall was killed. According to the testimony of Mrs. Ragland, a credible witness, James Thomas was not the last person seen with Mattie Hall. Mrs. Ragland saw another person with her on March 5, 1946.

The low mentality of the defendant is clearly evidenced in the record. His inculpatory statements are readily attributable to his ignorance, inexperience, and the fear that the underprivileged have of contact with officers of the law. His anxiety about the loss of the money he had loaned his aunt was perfectly natural for a man in his

station of life. The loss of $50 by the young, ignorant, unskilled negro laborer, perhaps all of his savings, may have troubled him. Men have worried about the loss of less.

The inferences to be drawn from the statement of the deputy sheriff that he appeared to be more worried about the loss of the money than about the death of his aunt may be as favorable to the defendant from one viewpoint as unfavorable from another. At most, his conduct and statements only create suspicion of his guilt.

There was not a physical fact, a blood spot, a sign of a struggle, or death weapon traceable to the defendant. There was no evidence as to how Mattie Hall came to her death. That she was killed by some stranger and robbed of $50 is entirely possible.

The evidence does not exclude every reasonable hypothesis except that of guilt. The facts are, at least, equally as susceptible of an interpretation which is consistent with the innocence of the defendant as with his guilt.

We have repeatedly stated the fundamental principles governing the sufficiency of circumstantial evidence to convict in a criminal case.

In the recent case of *Smith* v. *Commonwealth*, 185 Va. 800, 40 S. E. (2d) 273, Mr. Justice Buchanan aptly said:

 "It is important that crime be punished. It is even more important that the one punished should be first proved guilty by the evidence. In order for inferences to amount to evidence they must be inferences based on facts that are proved, and not inferences based on other inferences."

 "Circumstantial evidence must always be scanned with great caution, and can never justify a verdict of guilty, especially of murder in the first degree, the penalty of which is death, unless the circumstances proved are of such a character and tendency as to produce upon a fair and unprejudiced mind a moral conviction of the guilt of the accused beyond all reasonable doubt." *Dean* v. *Commonwealth*, 32 Gratt. (73 Va.) 912.

 The accused must be presumed to be innocent until his guilt is proved beyond a reasonable doubt. "Circum-

stances of suspicion however strong or grave are not sufficient to justify a verdict of guilt." *Andèrson* v. *Commonwealth*, 83 Va. 326, 2 S. E. 281; *Royals* v. *Commonwealth*, 144 Va. 630, 131 S. E. 204; *Dixon* v. *Commonwealth*, 162 Va. 798, 173 S. E. 521.

The presumption of innocence is "a presumption so strong that not only is an accused entitled to the benefit of it, but if the case be a doubtful one, this presumption is always sufficient to turn the scale in his favor." *Widgeon* v. *Commonwealth*, 142 Va. 658, 128 S. E. 459.

"The prisoner is presumed to be innocent until his guilt is established, and he is not to be prejudiced by the inability of the Commonwealth to point out any other criminal agent, nor ·is he called upon to· vindicate his own innocence by naming the guilty man. He rests secure in that presumption of innocence until proof is adduced which establishes his guilt beyond a reasonable doubt, and whether the proof be direct or circumstantial it must be such as excludes any rational hypothesis of the innocence of the prisoner." *McBride* v. *Commonwealth*, 95 Va. 818, 826, 30 S. E. 454; *Smith* v. *Commonwealth, supra.*

"Circumstances of suspicion merely, without more conclusive evidence, have never been held sufficient to justify conviction." *Tilley* v. *Commonwealth*, 90 Va. 99, 105, 17 S. E. 895.

A conclusion of guilt must be supported by credible evidence and cannot rest upon conjecture or suspicion. *Triplett* v. *Commonwealth*, 141 Va. 577, 127 S. E. 486.

Applying these principles, we cannot say that the circumstances, to a moral certainty, exclude every hypothesis but that of the guilt of the defendant. That there are circumstances which afford grounds of suspicion cannot be denied; but they do not prove beyond a doubt that the defendant was the murderer of his aunt. A conclusion of his guilt can only be reached by speculation, conjecture, or surmise.

For the reasons stated, the judgment complained of is

reversed and the case is remanded for a new trial, if the Commonwealth be so advised.

*Reversed and remanded.*

HUDGINS, C. J., dissenting.

The facts and inferences therefrom are stated, in the majority opinion, in the light most favorable to the accused. It must be remembered that the jury found a verdict against the accused and for the Commonwealth, and this verdict was approved by the trial court. The facts and all fair inferences therefrom which the jury had a right to and did so find are stated in the original opinion reported in *Thomas* v. *Commonwealth*, 186 Va. 814, 44 S. E. (2d) 365.

The rule by which this Court has been guided heretofore in considering a motion to set aside a verdict on the ground that it is not supported by the evidence is that the Court must discard all of the evidence introduced by the accused in conflict with the evidence for the Commonwealth, and must regard as true the Commonwealth's evidence and all fair inferences to be drawn therefrom. When the evidence is so considered the question is—is the verdict contrary to *that* evidence? " * * * where the evidence consists of circumstances and presumptions, a new trial will not be granted merely because the court, if upon a jury, would have given a different verdict. To warrant a new trial in such cases the evidence should be plainly insufficient to warrant the finding of the jury. This restriction applies *a fortiori* to an appellate court. For in the appellate court there is superadded to the weight which must be given to the verdict of a jury fairly rendered, that of the opinion of the judge who presided at the trial, which is always entitled to peculiar respect upon the question of a new trial." *Dean* v. *Commonwealth*, 32 Gratt. (73 Va.)

912, 917; *Davis* v. *Commonwealth*, 132 Va. 525, 110 S. E. 252; Code 1919, section 6363.

For these reasons I think we should adhere to the former decision.

Justice Buchanan concurs in the views herein expressed.