COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Coleman and Fitzpatrick
Argued at Richmond, Virginia


HOWARD CHARLES ROBENOLT, S/K/A
 HOWARD C. ROBENHOLT
                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2413-95-2     JUDGE SAM W. COLEMAN III
                                         JUNE 4, 1996
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF HENRICO COUNTY
                    George F. Tidey, Judge

        Alexander M. Clarke, Jr. (Oxenham, Rohde &
        Clarke, on briefs), for appellant.

        Marla Graff Decker, Assistant Attorney
        General (James S. Gilmore, III, Attorney
        General, on brief), for appellee.


     In this criminal appeal, Howard Charles Robenolt contends

that the evidence is insufficient to prove that he was the person

who committed the burglary of a restaurant.  We hold that the

evidence is sufficient and affirm the defendant's conviction.

     The Commonwealth first argues that the defendant is barred

by Rule 5A:18 from challenging the sufficiency of the evidence on

appeal because he did not state specific grounds in the trial

court for his motion to strike the evidence.  However, the record

reveals that the defendant moved to strike the evidence at the

close of the Commonwealth's case and renewed the motion in lieu

of presenting evidence.  The defendant's contention that the

evidence failed to prove that he was the criminal agent was

_____

        [*] Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

clearly presented to and considered by the trial judge. Accordingly, the issue of the sufficiency of the evidence was properly preserved for appeal.  See Previtire v. Commonwealth, 16 Va. App. 869, 870-71, 433 S.E.2d 515, 516 (1993).

When the sufficiency of the evidence is challenged on appeal, "we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom."  Bright v. Commonwealth, 4 Va. App. 248, 250, 356 S.E.2d 443, 444 (1987).  "The judgment of the trial court shall not be set aside unless it appears from the evidence that said judgment is plainly wrong or without evidence to support it."  Id. at 250-51, 356 S.E.2d at 444.

The evidence proved that the defendant was a patron sitting at the bar of the Southern Knights Restaurant at approximately 10:00 p.m. on September 13, 1994, when Tracy Richardson, a bartender at the restaurant, informed him that it was "last call."  Richardson testified that the defendant "had a flash light in his hand" when he came into the bar.  She testified that this aroused her suspicion because she had seen the defendant in the bar on prior occasions and he had never brought a flashlight with him.  Richardson did not see the defendant leave the restaurant, but she testified that he was not sitting at the bar when she began to lock up.  She "looked around inside the restaurant" and then went outside to the parking lot, but did not see the defendant.  Richardson then locked all of the doors and

placed a fitted bar across the back door.

Patricia Butner, the owner of the restaurant, arrived at the restaurant around 4:30 a.m. the following morning and found that money had been taken from the juke box and the pool tables. Butner discovered that there were more lights on than usual and that the bar used to secure the back door "was off of the back door sill."[1]  Officer Shawn Diasparra arrived at the restaurant soon thereafter.  Butner informed him that an undetermined amount of money had been stolen from the pool tables and the juke box. Butner also directed Officer Diasparra to talk to the defendant because he had been in the bar prior to closing.

Officer Diasparra went to the defendant's home around 6:00 a.m. and found the defendant asleep.  Diasparra informed the defendant that he was investigating a burglary at the Southern Knights Restaurant.  The defendant responded that he had been at home sleeping since 12:30 a.m.  The defendant then stated that he had purchased a six-pack of Miller Lite beer from a convenience store the previous evening "because . . . he drinks . . . Miller Lite Beer and not Miller Beer."  He showed Officer Diasparra a cooler that contained cans of Miller Lite and restated that he did not drink Miller beer.

Officer Diasparra testified that he found the defendant's statements concerning the beer odd because he did not ask the

_____

[1] The police later determined that the burglar entered the attic of the building through the roof and removed some ceiling tiles in order to get into the restaurant.

- 3 -

defendant about beer. Diasparra also testified that the defendant did not provide him any information about the burglary at the restaurant. On cross-examination, Officer Diasparra stated that "a Mr. Kennard Dameron was staying with [the defendant]" at his home.

The night following the burglary, Butner discovered that two cases of Miller beer were missing from the restaurant. Butner did not report the missing beer to the police, however, because she "figured that [Officer Diasparra] would be back in touch with [her]" and that she could report the missing beer later.

Approximately two weeks after the burglary, the defendant went to the restaurant, ordered a Miller Lite, and asked Butner if she knew who had broken into the restaurant. She responded that she did not. The defendant then volunteered to her "that some guy named Kennard and Marshall Ferguson" were involved in the burglary. The defendant also stated that the police had questioned him at 4:30 a.m. on the morning of the burglary. Butner told him that was impossible because she did not report the burglary until 5:00 a.m. Then, the defendant told Butner "that the policeman asked him what kind of beer he drank and he said, 'I drink Miller Lite.'" According to the defendant, the police officer responded, "[t]hat lets you off the hook. They took two cases of Miller Beer." At that time, Butner had not informed the police about the missing cases of beer, and she told the defendant that the officer could not have mentioned the beer

because he did not know about it. Butner testified that at the time the defendant mentioned the missing beer to her, only Richardson and a close friend named Pat Rickman knew about the missing cases of beer.

The evidence, viewed in the light most favorable to the Commonwealth, proves that the defendant, who acted suspiciously on the night of the burglary by bringing a flashlight into the bar, had the opportunity to commit the burglary. He was seen in the restaurant immediately before closing on the evening of the burglary. Although opportunity to commit a crime is not of great moment in proving one's guilt, the defendant's statements to Officer Diasparra, the morning following the burglary, that he did not drink Miller beer, and his conversation with Butner two weeks after the burglary, where he claimed that Officer Diasparra told him that two cases of Miller beer had been stolen and that he was "off of the hook" because he drank Miller Lite, were highly incriminating. They revealed a knowledge about specific facts pertaining to the burglary that were not common knowledge and only the burglar or someone he told would know. Officer Diasparra testified that he knew nothing about the missing beer when he talked to the defendant, and Butner still had not reported the missing beer to the police when the defendant talked to her. The trial court was entitled to infer guilty knowledge from these statements. See Speight v. Commonwealth, 4 Va. App. 83, 89, 354 S.E.2d 95, 99 (1987) (en banc). The court was also

free to reject the defendant's self-serving statement to Butner "that some guy named Kennard and Marshall Ferguson" were involved in the burglary.  See Black v. Commonwealth, 222 Va. 838, 842, 284 S.E.2d 608, 610 (1981) (holding that "[t]he fact finder need not believe the accused's explanation and may infer that he is trying to conceal his guilt"); Rollston v. Commonwealth, 11 Va. App. 535, 547-48, 399 S.E.2d 823, 830 (1991) (holding that the trier of fact "is not required to accept in toto an accused's statement, but may rely on it in whole, in part, or reject it completely").

The defendant contends that the evidence does not exclude the hypothesis that he learned about the stolen cases of beer from Kennard Dameron, who Officer Diasparra confirmed was living with the defendant.  However, because the defendant first indicated that he had knowledge of the crime on the morning of September 14 when he spoke with Officer Diasparra, and because he told Diasparra that he had been asleep from 12:30 a.m. until the time Diasparra arrived, the defendant could only have learned about the burglary from Dameron, if that was his source as he argues, sometime between 10:00 p.m. and 12:30 a.m.  No evidence suggests that Dameron was present at the house when Officer Diasparra questioned the defendant; nothing in the record indicates that the defendant and Dameron had been together between 10:00 p.m. and 12:30 a.m.  Moreover, the defendant did not mention Dameron to Officer Diasparra, nor did he tell

- 6 -

Diasparra that he had information about the burglary when Diasparra questioned him. Accordingly, the hypothesis of innocence raised by the defendant is not suggested or supported by evidence. It is not reasonable because it is purely speculative and does not flow from the evidence. Black, 222 Va. at 841, 284 S.E.2d at 609 (holding that "[t]he hypotheses which the prosecution must reasonably exclude are those 'which flow from the evidence itself, and not from the imagination of defendant's counsel'") (quoting Turner v. Commonwealth, 218 Va. 141, 148, 235 S.E.2d 357, 361 (1977)).

The circumstantial evidence is sufficient to prove beyond a reasonable doubt that the defendant was the criminal agent and, therefore, we affirm the defendant's conviction.

Affirmed.

BENTON, J., dissenting.


A conviction may not be based upon speculation, surmise, or conjecture. Thomas v. Commonwealth, 187 Va. 265, 272, 46 S.E.2d 388, 391 (1948). "The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970).

> It is, of course, a truism of the criminal law that evidence is not sufficient to support a conviction if it engenders only a suspicion or even a probability of guilt. Conviction cannot rest upon conjecture. The evidence must be such that it excludes every reasonable hypothesis of innocence. The giving by the accused of an unclear or unreasonable or false explanation of his conduct or account of his doings are matters for the jury to consider, but they do not shift from the Commonwealth the ultimate burden of proving by the facts or the circumstances, or both, that beyond all reasonable doubt the defendant committed the crime charged against him.

Smith v. Commonwealth, 192 Va. 453, 461-62, 65 S.E.2d 528, 533 (1951). See also Hyde v. Commonwealth, 217 Va. 950, 955, 234 S.E.2d 74, 78 (1977).

The evidence proved that the intruder entered the restaurant's building from the outside and through the attic. No evidence tended to prove that Howard Robenholt, who regularly patronized the restaurant, was that intruder. His presence with another patron in the restaurant until it closed established nothing probative regarding proof of the burglary.

The only items known to be missing following the burglary were coins taken from the pool table and the "juke box." The money in the cash register had not been removed. The owner looked in the stock room and noted that no beer was missing.

The majority makes much of Robenholt's statement to the police officer concerning beer. The record proved, however, that when the officer woke Robenholt at his home the morning following the burglary, he explained to Robenholt that he was investigating the burglary and asked Robenholt to explain his activities. During Robenholt's explanation of his activities after he left the restaurant, he told the officer that he purchased Miller Lite beer on his way home. He showed the officer the container of beer and said he knew nothing of the burglary. The evidence permits only "suspicious inferences" to be drawn from Robenholt's statements and conduct. Id.

After the officer questioned him, Robenholt believed that he had been accused of the burglary. Two days later he protested to the owner's daughter, who had served Robenholt in the restaurant the night before the burglary. She told him to talk to her mother, the owner.

A week later, Robenholt went to the restaurant, ordered a Miller Lite beer, and asked the owner if she had discovered who broke into the restaurant. During the conversation he informed her that he believed the intruders had been two men whom he identified by name. One of the men lived in the same residence

where Robenholt lived.

The owner testified that the night following the burglary, after the restaurant had been open for business the entire day and evening, she discovered that two cases of Miller beer were not in her stock. The owner did not then inform the police that the beer was missing or that she suspected it was taken during the burglary. Indeed, no evidence proved that two cases of Miller beer were taken during the burglary. The record proved only that the cases were discovered missing after the restaurant had been open a day and a night after the burglary. Furthermore, two weeks after the burglary, when Robenholt talked to the owner about his suspicions that a person who lived in his residence had committed the burglary, the owner had not yet reported the missing beer.

At best, the evidence only proved that Robenholt made statements that the majority deems suspicious. However, the context in which those statements were made was not so unambiguous that the statements can be deemed proof beyond a reasonable doubt of Robenholt's participation in the burglary. No evidence proved that Robenholt, who had patronized the restaurant for over a year, was the person who committed the burglary. "While it may be possible to draw suspicious inferences from . . . [Robenholt's] contradictory statements, . . . in the face of the presumption of innocence, such inferences are insufficient to prove beyond a reasonable doubt

that [Robenholt] committed the crimes."  Id.

For these reasons, I would reverse the conviction.