BENTON, J., dissenting. FITZPATRICK, CJ„ and CLEMENTS, J., join in Parts I and II. ELDER, J„ joins in Part II.
I believe that Rule 3A:8 requires a trial judge to at least consider any plea agreement prior to exercising the discretion to accept or refuse it. I also believe that the trial judge’s refusal to consider the agreement was additional evidence of his animosity toward Tyrone Alphonso Wilson’s attorney and that he abused his discretion in refusing to recuse himself. These errors, addressed in Parts I and II below, require a remand for a new trial. Further, I would reverse the convictions (except for the possession of a firearm by a convicted felon) because the evidence was insufficient to prove beyond a reasonable doubt that Wilson possessed cocaine or possessed marijuana.
*443 I.
The procedure governing plea agreements is set forth in Rule 3A:8(c). In pertinent part, the Rule provides:
(c) Plea Agreement Procedure.—
(1) The attorney for the Commonwealth and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon entry by the defendant of a plea of guilty, or a plea of nolo contendere, to a charged offense, or to a lesser or related offense, the attorney for the Commonwealth will do any of the following:
(A) Move for nolle prosequi or dismissal of other charges;
(B) Make a recommendation, or agree not to oppose the defendant’s request, for a particular sentence, with the understanding that such recommendation or request shall not be binding on the court;
(C) Agree that a specific sentence is the appropriate disposition of the case.
In any such discussions under this Rule, the court shall not participate.
(2) If a plea agreement has been reached by the parties, it shall, in every felony case, be reduced to writing, signed by the attorney for the Commonwealth, the defendant, and, in every case, his attorney, if any, and presented to the court. The court shall require the disclosure of the agreement in open court or, upon a showing of good cause, in camera, at the time the plea is offered. If the agreement is of the type specified in subdivision (c)(1)(A) or (C), the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider a presentence report. If the agreement is of the type specified in subdivision (c)(1)(B), the court shall advise the defendant that, if the court does not accept the recommendation or request, the defendant nevertheless has no right to withdraw his plea, unless the Commonwealth fails *444 to perform its part of the agreement. In that event, the defendant shall have the right to withdraw his plea.
(4) If the agreement is of the type specified in subdivision (c)(1)(A) or (C) and if the court rejects the plea agreement, the court shall inform the parties of this fact, and advise the defendant personally in open court or, on a showing of good cause, in camera, that the court will not accept the plea agreement. Thereupon, neither party shall be bound by the plea agreement. The defendant shall have the right to withdraw his plea of guilty or plea of nolo contendere and the court shall advise the defendant that, if he does not withdraw his plea, the disposition of the case may be less favorable to him than that contemplated by the plea agreement; and the court shall further advise the defendant that, if he chooses to withdraw his plea of guilty or of nolo contendere, his case will be heard by another judge, unless the parties agree otherwise.
(Emphasis added.)
The trial judge abused his discretion when he refused to consider the plea agreement the Commonwealth’s attorney and Wilson’s attorney were prepared to offer. The attorneys informed the judge they had reached an agreement, specifying that ‘Wilson would like to enter a plea of guilty” and that the agreement “call[ed] for a total sentence of twenty years with four to serve.” The Commonwealth’s attorney “ask[ed] the court to accept the plea” but acknowledged they did not “have a plea agreement written out.” When the judge refused to accept the plea agreement, the prosecutor sought to explain that “these last minute plea negotiations” had occurred because of information she received “yesterday.” She indicated “[i]t’s on the Commonwealth this time, judge.” At her request, the judge agreed to hear her representations in chambers.
The prosecutor informed the trial judge in chambers that an investigation had been launched concerning an allegation of “inaccurate testimony” by a police investigator, who was also *445 involved in Wilson’s case. She also informed the judge that the prosecutor “had offered Mr. Wilson ... five years back in July and today again dealing with uncertainties as to what would happen, I offered him four.” She further explained that the agreement had not been reduced to writing because she “was instructed [by her supervisor] ... what [she] had to do ... last night.”
In the courtroom, the trial judge announced that “[t]here is no agreement,” that he would not consider any plea agreement, that it was “too late to negotiate,” and that he was “not going to interrupt this trial and [allow the parties to] submit a plea agreement.” The record establishes, however, that at this point no witnesses had been sworn and the attorneys had not even made opening statements.
Although Rule 3A:8(c) indicates a plea agreement “shall, in every felony case, be reduced to writing,” we have held that a defendant’s “substantial rights were not implicated by the fact that the plea agreement was not in writing or disclosed in open court.” Hairston v. Commonwealth, 16 Va.App. 941, 945, 434 S.E.2d 350, 352-53 (1993). “The purpose of Rule 3A:8(c)(2), a procedural rule, is to ensure that plea agreements are fully disclosed to both the trial court and the defendant.” Id. at 945, 434 S.E.2d at 353. Moreover, to hold that the parties had failed to present a proper plea agreement because it was not reduced to writing is contrary to the plain language of Rule 3A:8. The fact that a plea agreement had not yet been reduced to writing did not prevent the parties from having reached an understanding as to the terms and conditions of an agreement, which the Commonwealth’s attorney indicated they had done. Rule 3A:8(c)(2) expressly provides that a plea agreement exists when the parties have reached an agreement as to whether the Commonwealth’s attorney will make a sentence recommendation, or specific sentence, or move for a nolle prosequi or dismissal of other charges as provided in subsection (e)(1)(A), (B), or (C) and thereafter “it shall ... be reduced to writing____” Thus, under the Rule a plea agreement exists when the parties have reached an agreement the *446 terms of which comport with either subsection (A), (B), or (C) of Rule 3A:8(c).
In other words, the agreement exists prior to the writing. Indeed, to deny that an oral agreement could exist is contrary to our decision in Hairston, where we enforced the terms of an oral plea agreement against a defendant. 16 Va.App. at 945, 434 S.E.2d at 352-53. The plurality’s pinched reading of Rule 3A:8 ignores the purposes of the rule, which are to provide public disclosure of plea agreements and to avoid arguments over the terms in the event either the Commonwealth or the defendant is in breach. In this case, the record shows that the terms of the plea agreement had been reached and were orally presented to the trial judge. The Commonwealth’s attorney said, “Before this case proceeds further, it’s my understanding that Mr. Wilson would like to enter a plea of guilty. We don’t have a plea agreement written out. We would ask for the court to accept the plea.” The Commonwealth’s attorney also said the agreement “called for a total of twenty years with four to serve.” Clearly, the parties had reached a meeting of the minds and needed only the opportunity to reduce the plea terms to writing. Indeed, the trial judge did not refuse to hear the agreement because there was “no meeting of the minds,” but because he wanted to begin the trial. He ruled, “You seem to think ... that somehow or another you have a right to stop everything and present a plea agreement and force me to consider a plea agreement. This trial is ready to begin.” In view of these circumstances, I would hold that the judge erroneously refused to consider the plea agreement.
I would also hold that the trial judge erroneously concluded that the trial had already begun, that the prosecutor and Wilson’s attorney were barred from presenting an agreement, and that Wilson was barred from entering a guilty plea consistent with the agreement. We are not bound by findings that are plainly wrong. Hudson v. Hudson, 249 Va. 335, 342, 455 S.E.2d 14, 18 (1995). The record belies the trial judge’s ruling that the trial had begun. No witnesses had been sworn when these discussions occurred. In addition, even assuming *447 the mere formal opening of the court could be deemed the commencement of trial and acknowledging that a plea of guilty is separate and distinct from a plea agreement, we have previously held that “[t]he fact ... the trial has begun has no effect on a defendant’s constitutional right to plead guilty.” Graham v. Commonwealth, 11 Va.App. 138, 141, 397 S.E.2d 270, 274 (1990). The judge’s error is plain.
The Commonwealth’s concern, expressed on appeal for the first time, that presenting a plea agreement after a trial has begun might constitute a defendant’s attempt to force a judge to be removed from a case, is misplaced. The judge need entertain only agreements that have been “reached by the parties.” Rule 3A:8(c)(2). Therefore, a defendant in a criminal trial is unable to unilaterally force the judge to consider a plea agreement or to require a judge to remove him or herself from the case in the event that the judge rejected the agreement. Only if the defendant and the Commonwealth, as in this case, have reached an agreement, must the trial judge consider it. See Rule 3A:8. The spirit of the rule intends for a trial judge, at the very least, to consider the plea. Only when he had done so should he be able to exercise his discretion in refusing or accepting it on its terms.
I would hold that the trial judge erred by refusing to consider the proffered agreement, or any agreement predicated upon a guilty plea that the parties had reached. Rule 3A:8 requires a trial judge to consider a plea agreement reached by the Commonwealth’s Attorney and a defendant. The trial judge was not privileged to refuse to consider the agreement reached between the parties or to treat the agreement as though none existed.
II.
I would also hold that the trial judge should have granted Wilson’s motion that the judge recuse himself from presiding over the trial.
On July 16, 2002, when this case was set for trial, the clerk called the case and asked Wilson whether he wanted a trial by *448 jury or a bench trial. Wilson said he wanted a jury trial. The trial judge noted that a jury could not be secured that day, said he would arraign Wilson, and ruled the trial would begin the following day. As the clerk began the arraignment, the trial judge interrupted and said Wilson’s attorney had “caused this problem.” He then announced that he was “going to reheve [Wilson’s attorney] ... from [his] responsibilities in this case.” When he learned that Wilson’s attorney was privately retained and not court appointed, he ruled: “I am removing you from the court appointed list, effectively immediately----I am not going to have a court-appointed lawyer who practices that way in this court building.” He then continued the case noting that “the defendant’s constitutional right to a jury trial overrides any shenanigans that the attorney may participate in.” In denying Wilson’s later motion that he recuse himself from the trial, the judge said that he did not “hold any ill will toward [Wilson’s attorney]” and that he was “going to be fair.”
“A judge shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.” Canon 8(C) of the Canons of Judicial Conduct for the State of Virginia. “The requirement of this Canon is clear; a judge must diligently avoid not only impropriety but a reasonable appearance of impropriety as well.” Davis v. Commonwealth, 21 Va.App. 587, 591, 466 S.E.2d 741, 743 (1996). See also, Canon 3(E) (“A judge shall disqualify himself or herself in a proceeding in which the judge’s impartiality might reasonably be questioned ----”). As the Commentary to Canon 3(B)(5) explains, a judge who “manifests bias on any basis in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute----A judge must be alert to avoid behavior that may be perceived as prejudicial.”
The Supreme Court has held that recusal was not required when a party alleged the trial judge committed only a “purported” violation of the Canons, that is, conduct that is suspected or falsely assumed to be a violation but is in fact not. Commonwealth v. Jackson, 267 Va. 226, 229, 590 S.E.2d 518, 519 (2004). In that case, a probation revocation proceeding, *449 the defendant “requested Judge Griffith to recuse himself because he was the elected Commonwealth’s Attorney ... at the time [the defendant] was convicted of the offense resulting in the suspended sentence.” Id. at 228, 590 S.E.2d at 519. The defendant alleged a violation of Canon 3(E)(1)(b), which requires a judge to disqualify himself if “[t]he judge served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter.” Citing its holding in Green v. Commonwealth, 263 Va. 191, 195-96, 557 S.E.2d 230, 233 (2002), the Court explained that the trial judge committed no violation of this Canon because a probation revocation hearing, while a criminal proceeding, is not a stage of a criminal prosecution. Jackson, 267 Va. at 229, 590 S.E.2d at 519. Therefore, the Court rejected the suggestion that the trial judge was both the accuser at the original criminal trial and the trier-of-fact at a continuation of the same trial. Id. In addition, the Court noted that it has “not required a judge to recuse [himself] ... merely because he ... has seen or had indirect knowledge of the defendant on a previous occasion.” Id.
The Court, however, has “consistently held that a trial judge must exercise reasonable discretion to determine whether he possesses such bias or prejudice as would deny a party a fair trial.” Deahl v. Winchester Dep’t of Social Services, 224 Va. 664, 672, 299 S.E.2d 863, 867 (1983). “In exercising his discretion in this regard, the judge must be guided not only by the true state of his impartiality, but also by the public perception of his fairness, in order that public confidence in the integrity of the judiciary may be maintained.” Stamper v. Commonwealth, 228 Va. 707, 324 S.E.2d 682, 686 (1985). In other words, “justice must satisfy the appearance of justice.” Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 14, 99 L.Ed. 11 (1954).
I would hold the trial judge’s actions would convey to a reasonable person a belief he would not receive a fair trial because the judge was not impartial. The judge ruled in the presence of Wilson that the attorney had used “shenanigans” *450 when advising Wilson of his constitutional right to seek a jury trial. The attorney’s advice to Wilson must be viewed, however, within the context of this circuit court’s procedures. As the trial judge noted on the record, the circuit court’s scheduling practices are such that attorneys make these “last-minute” requests for jury trials. Specifically, he acknowledged that, “with that policy in mind, you run the risk every time you walk over here of messing with our scheduling practices by making a last-minute request for a jury.” However, as we held in Jones v. Commonwealth, 24 Va.App. 636, 484 S.E.2d 618 (1997), a case that arose from this same circuit court, a trial judge may not rely upon a scheduling order for determining waiver of a jury trial when the record does not show that the defendant had manifested by some deliberate action an election to forego his right to a jury trial. Id. at 640-41, 484 S.E.2d at 620-21. See also Robinson v. Commonwealth, 36 Va.App. 1, 548 S.E.2d 227 (2001); Herbert v. Commonwealth, 33 Va.App. 506, 534 S.E.2d 369 (2000). As punishment for the attorney’s advice to Wilson to invoke his right to a jury trial under the court’s procedures, the trial judge sought to remove the attorney from his representation of Wilson and, when that could not be achieved, removed the attorney from the list of eligible court-appointed attorneys. “To punish a person because he has done what the law plainly allows him to do is a due process violation ‘of the most basic sort.’ ” United States v. Goodwin, 457 U.S. 368, 372, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982) (citation omitted). To assure that he would try Wilson after punishing Wilson’s attorney, the judge later made an affirmative, successful effort to solicit the re-assignment of this case to his courtroom for trial.
As previously discussed, the trial judge later refused to accept a plea agreement as requested by Wilson and the Commonwealth. The record further establishes that the sentence imposed on Wilson exceeded the sentencing guidelines and exceeded the sentences imposed upon the lessee of the apartment (where the marijuana was hidden) and the owner of the van (where the cocaine was hidden), both of whom were arrested in the residence. Although Wilson represents on *451 brief that his sentence exceeded those of each of the other four defendants, the sentences of two defendants are not disclosed on the record.
When the state undertakes to deprive a person of liberty, then the trial must not only be fair, it must appear to be fair before the public. Both fairness and the integrity of our judicial process were called into question by the trial judge’s actions. I would hold, therefore, that these circumstances establish that the trial judge abused his discretion in denying Wilson’s motion that the judge recuse himself from the trial.
III.
In addition, the evidence did not prove that Wilson actually possessed any of the marijuana or cocaine.
To support a conviction based upon constructive possession, “the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance and that it was subject to his dominion and control.” ... Mere proximity to a controlled drug is not sufficient to establish dominion and control.
Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986) (citation omitted). “[Wjhere, as here, a conviction is based on circumstantial evidence, ‘all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.’” Garland v. Commonwealth, 225 Va. 182, 184, 300 S.E.2d 783, 784 (1983) (citation omitted). Proof of suspicious circumstances, “no matter how strong, is insufficient to sustain a criminal conviction.” Stover v. Commonwealth, 222 Va. 618, 624, 283 S.E.2d 194, 197 (1981) (citing Thomas v. Commonwealth, 187 Va. 265, 271-72, 46 S.E.2d 388, 391 (1948)).
I agree that Wilson was found in suspicious circumstances. He was seized in an apartment that contained marijuana and cocaine. Wilson had a large amount of cash and a weapon. Wilson had in his possession the key to a van that concealed *452 $350,000 worth of cocaine and that contained a Huger .45-caliber magazine, which fit the weapon Wilson had in his possession. While these suspicious circumstances were not trifles, the Commonwealth failed to prove, beyond mere suspicions, that Wilson was aware of the cocaine in the van (a vehicle that he did not own or occupy), that he was aware of the marijuana located in a closed kitchen cabinet (in an apartment he did not own or lease), and that he exercised the kind of dominion or control, commensurate with possession, over any of the marijuana or cocaine.
To sustain convictions for constructive possession, the Supreme Court and this Court have required much more compelling evidence than the circumstance here. “The evidence must go further than create a mere suspicion or probability of guilt. There must be credible evidence to arrive at a conclusion of guilt beyond a reasonable doubt.” Rich v. Commonwealth, 198 Va. 445, 452, 94 S.E.2d 549, 554 (1956). Thus, for constructive possession, the evidence must be sufficient to prove beyond a reasonable doubt that the defendant was both aware of the presence and character of the substance and that he exercised dominion and control over the substance commensurate with actual possession. See e.g., Drew, 230 Va. at 474, 338 S.E.2d at 846 (holding that the evidence was insufficient to prove constructive possession by the defendant where it established, at most, that he resided at the residence and was near the residence the night the cocaine was seized from it); Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984) (proving that drugs were found secreted in the defendant’s house was insufficient to prove he constructively possessed the drugs); McNair v. Commonwealth, 31 Va.App. 76, 86, 521 S.E.2d 303, 308 (1999) (holding that “ ‘[suspicious circumstances, including proximity to a controlled drug, are insufficient to support a conviction [for constructive possession]’ ”); Nelson v. Commonwealth, 17 Va.App. 708, 711, 440 S.E.2d 627, 628 (1994) (arresting the defendant in a motel room registered to another was insufficient to prove he knew that cocaine was on the premises or that he exercised any control over the cocaine, where “[c]ocaine was secreted in a *453 toothbrush holder in the [motel] bathroom, and a small amount was found on the carpet under the bed”); Burchette v. Commonwealth, 15 Va.App. 432, 435, 425 S.E.2d 81, 83 (1992) (holding that ownership or occupancy of a vehicle where drugs were located was insufficient to establish constructive possession); Behrens v. Commonwealth, 3 Va.App. 131, 135, 348 S.E.2d 430, 432 (1986) (holding that evidence was suspicious, but insufficient to establish constructive possession, when drugs were found in a hotel room registered to defendant and defendant was not seen in proximity to drugs).
This concern for a conviction based on suspicion is reflected in the statutory admonition that neither proximity to, nor a proprietary interest in, the premises containing the illegal substance is sufficient to convict. Proof of “ownership or occupancy of premises or vehicle upon or in which a controlled substance was found shall not create a presumption that such person either knowingly or intentionally possessed such controlled substance.” Code § 18.2-250. Notably, Wilson was neither the owner nor occupant of the van nor was he in the proximity of the van during the seizure. Wilson was in the apartment, and the van was parked some distance away. The trial judge erred in concluding that Wilson constructively possessed the drugs in the van.
Prior cases demonstrate that the circumstances here do not establish Wilson’s guilt beyond a reasonable doubt. For example, in Burchette, the defendant owned the vehicle where police found his wallet, cell phone, pager, and bills in his name, in addition to marijuana packaged for distribution. Unlike in this case, where the cocaine was elaborately hidden in the vehicle, some of the marijuana discovered in Burchette’s vehicle was in plain view. 15 Va.App. at 435, 425 S.E.2d at 83. The police also observed Burchette walking by the vehicle, which was parked in front of his home, shortly before he drove away in another vehicle. Id. We held that the evidence amounted to mere suspicion only and, because the Commonwealth failed to negate the reasonable inference that someone other than Burchette had used the car and placed the marijua *454 na there, the evidence failed to support the conviction. Id. at 439, 425 S.E.2d at 86.
Wilson’s possession of the key to the van, coupled with the officer’s discovery of the .45-caliber magazine in the van, does not establish Wilson’s awareness of the cocaine concealed in hidden compartments. Wilson did not own the van. Indeed, no evidence proved he had been inside the van. The Supreme Court also has held that possession of a key to a location where drugs are located is not sufficient to establish either awareness or dominion and control. See Clodfelter v. Commonwealth, 218 Va. 619, 238 S.E.2d 820 (1977). This is true even when the defendant was the sole occupant of the place at issue. Id. at 621, 238 S.E.2d at 821. In Clodfelter, the defendant, like Wilson, had the key to the place where drugs were located (in Clodfelter’s case, a hotel room). Id. Unlike Wilson, who had the key but was not the owner, Clodfelter was the only registered guest in that hotel room and was, thus, both owner and occupant. Despite this more compelling evidence, the Supreme Court reversed his conviction, holding that “while the evidence created a strong suspicion of guilt, it fell short of proving possession beyond a reasonable doubt.” Id. at 623, 238 S.E.2d at 822. The Court made the following pertinent observations about the suspicious circumstances:
Distilled to its basic elements, the evidence, and reasonable inferences therefrom, show that Clodfelter rented the hotel room and that he had deposited some of his personal effects there. The evidence also shows that Clodfelter, when questioned by the police, gave a false identity. Certainly this evidence creates a strong suspicion of guilt, but it falls short of showing beyond a reasonable doubt that the drugs found in the hotel room were ever actually or constructively possessed by Clodfelter with an awareness of their character.
Id. at 624, 238 S.E.2d at 822. As Burchette and Clodfelter demonstrate, Wilson’s possession of the key to the van, and the presence of the magazine inside the van, do not establish beyond a reasonable doubt that Wilson was aware of the *455 cocaine or that he exercised any measure of dominion and control over the hidden cocaine.
In addition to this failure of proof, the Commonwealth also failed to disprove reasonable hypotheses that flowed from the evidence that were “inconsistent with guilt.” Despite extensive surveillance, the police did not testify about when or how Wilson arrived at the apartment, whether he drove the van, or for what purpose he was at the apartment. Because the cocaine was elaborately concealed in a hidden compartment, where it was discovered only after a drug sniffing dog alerted and an extensive search occurred, the evidence left entirely within the realm of reasonable possibility that the owner of the van, Javone McCantz, who was also seized during the raid at the apartment, alone possessed the cocaine and alone knew of its existence. The evidence does not negate the reasonable hypothesis that Wilson had the key for a purpose unrelated to the cocaine. No evidence even negated the inference that, if Wilson had driven the van, he had done so without being aware of the hidden cocaine. Indeed, no evidence proved Wilson had been in the van. As in Clodfelter and Burchette, the discovery of the .45-caliber Ruger magazine at most suggests that Wilson may have been in the van at some point in the past. We do not know when, because the Commonwealth’s evidence failed to prove this critical fact.
The evidence was similarly lacking that Wilson was aware of the presence of the marijuana in the kitchen cabinet or that he exercised any measure of dominion and control over it. Police seized the marijuana from a closed kitchen cabinet. The only fact the Commonwealth identifies as suggesting that Wilson was aware of the marijuana was his mere presence in the apartment. The trial judge could not properly assume from this fact that Wilson knew of the presence of the marijuana. As the Supreme Court held in Huvar v. Commonwealth, 212 Va. 667, 187 S.E.2d 177 (1972), it is impermissible for a fact finder to infer awareness and control of drugs simply because a suspect is present at a location where drugs were found. In Huvar, the defendant was arrested in the bathroom of an apartment; drugs were scattered in plain view in other rooms; *456 the apartment smelled of marijuana; and the defendant appeared to have been using drugs. 212 Va. at 668, 187 S.E.2d at 177-78. Despite the “suspicious circumstances,” the Court held that the defendant did not have constructive possession of the drugs.
It is the theory of the Commonwealth that the police interrupted a “pot party.” One could reasonably reach this conclusion from the evidence. However, the mere presence of defendant at the party is not sufficient to convict him of actual or constructive possession of the drugs that were found there. It was not his apartment. Those present were not shown to have been his guests or there at his invitation. None of the prescription containers in which some of the drugs were found bore his name on their labels. He made no statement, committed no act and indulged in no conduct from which the inference could be fairly drawn that he possessed or controlled the drugs which the police found.
Id. at 668,187 S.E.2d at 178.
Similarly, in Drew, the Supreme Court reversed a conviction for constructive possession where a search of a residence revealed the defendant’s checkbook, bank statement, telephone bill, driver’s license, vehicle registration, credit union voucher, and a large amount of cocaine and drug paraphernalia. Each documentary item listed the residence as the defendant’s address. In addition, the evidence proved the police saw the defendant standing near the residence. 230 Va. at 472, 338 S.E.2d at 845. Despite these suspicious circumstances, the Supreme Court held the evidence was insufficient to establish constructive possession: “At most, the evidence establishes that [the defendant] resided at ... and ... was near the residence the night the cocaine was seized. This is insufficient to prove constructive possession by the defendant.” Id. at 474, 338 S.E.2d at 846.
In comparison to both Huvar and Drew, the evidence against Wilson was weaker still. He was not the lessee or the owner. The lessee was actually present in the apartment with Wilson and other people. The marijuana was not in plain *457 view; it was hidden in the kitchen cabinet. The evidence failed to establish any connection, beyond speculation, between Wilson’s money and the marijuana. The Commonwealth simply failed to prove beyond a reasonable doubt that Wilson was aware of the presence of marijuana. Suspicious circumstances are never enough to establish guilt. Christian v. Commonwealth, 221 Va. 1078, 1082, 277 S.E.2d 205, 208 (1981).
Similarly, Wilson was not in proximity to the hardball of cocaine when the police entered the apartment. He was in the kitchen, while the hardball of cocaine, which did not have his fingerprints on it, was in the living room. The presence of this one item of cocaine, in plain view but in a room where Wilson was not, certainly cannot provide the basis for the fact finder to conclude Wilson was aware of the presence and character of this single hardball of cocaine. See Huvar, 212 Va. at 668, 187 S.E.2d at 177-78 (holding that a defendant’s presence in an apartment where the odor of marijuana was prevalent and drugs were scattered about is insufficient to prove he possessed or controlled the drugs).
The essence of constructive possession for drugs is control, which must be proven beyond a reasonable doubt. If the Supreme Court and this Court could not conclude that the defendants in Burchette, Huvar, Behrens, and other cases constructively possessed drugs, we cannot sustain Wilson’s conviction on weaker evidence. Our case law has been clear on the law of constructive possession and has guarded against “ad hoc judicial judgments against those often identified by chance discovery, and prosecuted by official whimsy.” Charles H. Whitebread and Ronald Stevens, Constructive Possession in Narcotics Cases: To Have and Have Not, 58 Va. L.Rev. 751, 751 (May 1972). This record contains no “evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance and that it was subject to his dominion and control.” Powers, 227 Va. at 476, 316 S.E.2d at 740. In short, the evidence in this case is consistent with Wilson’s presence *458 at the apartment as a visitor; it failed to prove he possessed any of the drugs.
For these reasons, I would hold that the evidence was insufficient to support the three drug related convictions. Thus, I would reverse the convictions and dismiss all indictments except possession of a firearm by a felon.