COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Bumgardner and Frank
Argued at Alexandria, Virginia


HERBERT WILLIAMS, JR.
                                          OPINION BY
v.    Record No. 1253-98-4        JUDGE ROBERT P. FRANK
                                     SEPTEMBER 26, 2000
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
              Thomas J. Fortkort, Judge Designate

          Dan Burke (Tyler, Bartl, Burke & Albert, on
          briefs), for appellant.

          Richard B. Smith, Assistant Attorney General
          (Mark L. Earley, Attorney General, on brief),
          for appellee.


     Herbert Williams, Jr., (appellant) was convicted of robbery

in violation of Code § 18.2-58, use or display of a firearm in

the commission of a felony in violation of Code § 18.2-53.1 and

wearing a mask in violation of Code § 18.2-422.  On appeal, he

contends the trial court erred in:  1) failing to grant him a

trial by jury, 2) failing to grant him a continuance, and 3)

finding the evidence sufficient to support the convictions.  We

agree in part and disagree in part.  Accordingly, we reverse and

remand.

                    II.  BACKGROUND

     On September 18, 1996, Dost Khan was working at the front

desk of the Towers Hotel in Alexandria.  At approximately

10:00 p.m., a man, who was dressed in a camouflage suit and was carrying a gun, came up to him. Because the man was wearing a mask, Khan could only see his eyes and hand. Khan estimated the robber to have been six feet six inches tall and stated that the man had dark skin.

The man told Khan to give him all the money or he would shoot him. Khan told the man to take the money from the register. The register contained one and five dollar bills. When the man put the money in his pocket, Khan saw a key attached to a white object fall to the floor. The robber then left the premises.

Khan's co-worker, Sayed Salay, was in the back when he heard the robber tell Khan, "Give me the money, Otherwise I will shoot." Salay went into the office and called 911 as the robber left the premises. Salay estimated there had been between $75 and $76 in the register.

The first police officer arrived within a minute. No one entered or left the hotel between the time the robber left and the police officer arrived.

Officer Kim Hendrick arrived within five minutes with her police dog, "Husky." Hendrick was qualified as an expert and testified that she "started a track right from the area [where Khan] had pointed out he had last seen the suspect." She stated that "Husky immediately picked up the scent," and she let the dog pull her along the track.

She testified that, as the dog moved away from the hotel, "[t]he dog's behavior [was] telling [her] that the person that [they were] tracking [was] close by." Shortly thereafter, appellant came walking along the sidewalk from an area of foliage. Husky lunged at appellant, which Hendrick said indicated that the dog "was trying to tell [her] that this is the person that we are looking for."

Appellant asked Hendrick, "Are you looking for a guy with a mask on?" He then told her he had seen such a man running in a northerly direction. Because Hendrick never saw anyone wearing a mask or camouflage, she asked appellant why he was there. Appellant answered, "I'm here to pick up my wife."

Hendrick left appellant with the other officers at the hotel and went to a nearby site where a Cadillac automobile had been found. She testified that she "put the dog in the car and right away [Hendrick] saw a camouflage suit" in the backseat of the car.

When Hendrick returned to the hotel, Husky immediately focused on appellant again, barking and pulling toward appellant while ignoring everyone else. In Hendrick's expert opinion, Husky's behavior was consistent with the dog telling her appellant was the object of the "track" from the front door.

When Officer Tim Madden talked to appellant, appellant told him he had seen a man wearing a mask and a drab green sweatshirt running north on Van Dorn Street. Officer Madden noted that

appellant "appeared to me to be nervous." Madden also stated that "he looked as though, very disheveled, sweating a slight bit." Appellant told Madden his name was "Dick Clark" and that he lived on Chamberlain Street in Cincinnati, but he could not spell the name of the street. Appellant said he was visiting friends in Washington and had been on his way to a 7-11 convenience store.

After Husky found the camouflage suit in the Cadillac, Sergeant Bishop observed a telephone message slip with the name "Herb Williams" on it, and another officer found a letter from the I.R.S. addressed to "Herbert Williams" in the vehicle. Beneath the papers in the car, the officers found a Marksman 177 air pistol. Officer Balcom testified the weapon fires a ".177 caliber steel or lead projectile." Balcom also stated that the gun "resembles a semiautomatic handgun that would fire a different type of projectile." They also found a mask in the back of the car. The face of the mask was black and white and had a black hood over the back of it.

The officers found "$77 in one and five denominations" in the pocket of the camouflage suit. The set of keys dropped by the robber had a Cadillac insignia on both sides. Detective Joseph Seskey started the Cadillac with the keys dropped by the robber.

Appellant told Sergeant Bishop he was visiting a friend at the hotel but declined to identify the friend. When appellant

told Bishop his name really was Herbert Williams, the officer testified that he "linked [appellant] to the vehicle and told him that he was under arrest and charged with robbery."

Dost Khan testified the mask found in the Cadillac was similar to the one worn by the robber.  The gun shown to him at the trial was the same size as the robber's, but the color was not exactly the same.  However, Officer Balcom testified that the cyanide acrylate that had been put on the gun when it was processed for fingerprints had distorted the weapon's color.

Appellant testified in his own behalf.  He admitted to having been convicted of four felonies.  He claimed someone named "Steve" took his car.  After waiting two hours, he started to walk when he saw the police near the Towers Motel.  He denied going into the motel, wearing a mask, or carrying a gun.  Appellant denied having committed or having knowledge of the robbery.  He claimed "Steve" was 5'10" tall; appellant admitted that he is 6'4" tall.

## II.  ANALYSIS[1]

### A.  Trial by Jury

Appellant was indicted on January 6, 1997.  The trial originally was scheduled for March 4, 1997.  On appellant's motion, it was continued until April 2, 1997, and appellant was

---

[1] Because we find the trial court erred in failing to grant appellant a trial by jury, we need not address appellant's assignment of error with regard to the continuance.

released on bond.  Appellant absconded for six months and was arrested on a capias in October 1997.  The trial was then set for November 20, 1997.

On November 20, 1997, appellant signed a jury waiver form that stated, "I, the undersigned defendant hereby waive my right to a trial by jury, and request the court to hear all matters of law and fact in the above case."  The jury waiver form also was signed by the Commonwealth's attorney and the trial court, indicating their concurrence.  On November 24, 1997, the trial court entered an order continuing the case until January 21, 1998.  The order stated appellant and the Commonwealth signed the jury waiver form.

On January 20, 1998, appellant filed a motion for another continuance, which the trial court denied.  On the day of trial, January 21, 1998, appellant asked for a jury, stating that he had changed his mind.  In denying appellant's demand for a jury, the trial court responded that appellant had more than a month to request a jury and such request could have been made the day before trial in connection with the continuance motion.

Appellant's counsel, the final of four attorneys who represented appellant in various stages of the proceedings, was surprised at appellant's demand and indicated he was not prepared for a jury trial.

The Commonwealth had eleven witnesses present and was ready to proceed.  One witness planned to leave on a three-month vacation the next week.

Appellant maintains the trial court, in denying his request to be tried by a jury, violated his right to a jury under the Virginia and United States Constitutions.

Article I, § 11 of the Virginia Constitution provides, in pertinent part, that "in controversies respecting property, and in suits between man and man, trial by jury is preferable to any other, and ought to be held sacred."  Code § 8.01-336 provides, in part, that "[t]he right of trial by jury as declared by Article I, § 11 of the Constitution of this Commonwealth and by the statutes thereof shall be preserved inviolate to the parties."  The same section also permits an accused who enters a plea of not guilty to waive a jury with the concurrence of the Commonwealth's Attorney and the court entered of record.  See id.

Rule 3A:13(b) sets forth the procedure for waiver of a jury trial:

> If an accused who has pleaded not guilty in a circuit court consents to trial without a jury, the court may, with the concurrence of the Commonwealth's Attorney, try the case without a jury.  The court shall determine before trial that the accused's consent was voluntarily and intelligently given, and his consent and the concurrence of the court and the Commonwealth's Attorney shall be entered of record.

In the instant case, the record does not reflect that the trial court determined that appellant voluntarily and intelligently consented to trial without a jury.

Jones v. Commonwealth, 24 Va. App. 636, 484 S.E.2d 618 (1997), is instructive. In Jones, the appellant signed a scheduling order indicating she chose to be tried by the court, not a jury. See id. at 639, 484 S.E.2d at 620. The Jones Court found that because the trial court made no finding that the appellant voluntarily and intelligently waived her right to a jury, there was no valid waiver of a jury. See id. at 640, 484 S.E.2d at 620. The Court stated, "This is not a case where an accused validly waives a jury trial and then seeks to withdraw that waiver." Id. at 641, 484 S.E.2d at 621.

"Where there has been a knowing, intentional and voluntary waiver of the right to a jury trial there is no absolute constitutional right to withdraw it." Carter v. Commonwealth, 2 Va. App. 392, 398-99, 345 S.E.2d 5, 9 (1986) (citation omitted).

Thomas v. Commonwealth, 218 Va. 553, 238 S.E.2d 834 (1977), sets forth the factors to be considered when the accused moves to withdraw his or her waiver:

> "Whether one accused of crime who has regularly waived a jury trial will be permitted to withdraw the waiver and have his case tried before a jury is ordinarily within the discretion of the trial court. The rule, as expressed in some cases, is that if an accused's application for withdrawal of waiver is made in due season

so as not to substantially delay or impede
the cause of justice, the trial court should
allow the waiver to be withdrawn.

"The authorities are uniformly to the
effect that a motion for withdrawal of
waiver made after the commencement of the
trial is not timely and should not be
allowed.  Whether a motion for the
withdrawal of a waiver of trial by jury made
prior to the actual commencement of the
trial of the case is timely depends
primarily upon the facts and circumstances
of the individual case.  Where there is no
showing that granting the motion would
unduly delay the trial or would otherwise
impede justice, the motion is usually held
to be timely.  In some cases, however, it
has been held that a motion for withdrawal
of a waiver of jury trial, although made
prior to the trial, was not timely and was
properly denied by the trial court, the
decisions in these cases being based
primarily upon the ground that granting the
motion would have resulted in an
unreasonable delay of the trial."

Id. at 555, 238 S.E.2d at 835 (citation omitted).

In the present case, the trial court never found that

appellant voluntarily and intelligently waived his right to

trial by jury.  The transcript of the hearing in which appellant

signed the waiver is not before this Court.  The Commonwealth

argues that because appellant did not include the transcript,

the "waiver" argument must be rejected pursuant to Rule 5A:8(b).

Because the continuance order, which referenced the "waiver,"

contains no finding that the jury waiver was voluntarily and

intelligently entered, the transcript is not relevant.  A court

speaks only through its orders.  See Cunningham v. Smith, 205 Va. 205, 208, 135 S.E.2d 770, 773 (1964).

The order reflecting the hearing merely acknowledges that appellant signed the waiver and that the Commonwealth's attorney and the trial court concurred.

Without such finding, appellant did not effectively waive his right to a jury.  On the trial date, appellant had an absolute right to a jury.  This is not a case where appellant moved to withdraw his waiver; therefore, we do not decide whether the trial court abused its discretion in not allowing appellant to withdraw a proper waiver of his right to a jury. For these reasons, we find that the trial court erred in failing to grant appellant a trial by jury, and, therefore, we reverse and remand for a new trial.

## B.  Sufficiency of the Evidence

We review the sufficiency of the evidence based on the evidence adduced at trial, and we do so for double jeopardy purposes.  See Parsons v. Commonwealth, 32 Va. App. 576, 581, 529 S.E.2d 810, 812-13 (2000).  We find the evidence adduced at trial sufficient to support the convictions.

## III.  CONCLUSION

Although we find the evidence sufficient to support the convictions, we reverse and remand for a new trial because we

find that the trial court erred in failing to grant appellant's request for a trial by jury.

<u>Reversed and remanded.</u>