Tuesday                    1st

March, 2005.


Tyrone Alphonso Wilson,                                    Appellant,

 against          Record No. 1229-03-1
                 Circuit Court Nos. CR02000742-00 through CR02000742-02
                          and CR02001213-00

Commonwealth of Virginia,                                 Appellee.


Upon a Petition for Rehearing En Banc

Before Chief Judge Fitzpatrick, Judges Benton, Elder, Bumgardner, Frank,
Humphreys, Clements, Felton, Kelsey and McClanahan


On February 1, 2005 came the appellee by the Attorney General of Virginia, and filed a petition

praying that the Court set aside the judgment rendered herein on January 18, 2005, and grant a rehearing

*en banc* thereof.

On consideration whereof, the petition for rehearing *en banc* is granted, the mandate entered

herein on January 18, 2005 is stayed pending the decision of the Court *en banc*, and the appeal is

reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35. The appellee shall attach as an

addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the

Court in this matter.  It is further ordered that the appellee shall file with the clerk of this Court twelve

additional copies of the appendix previously filed in this case.

A Copy,
                    Teste:
                              Cynthia L. McCoy, Clerk
                    By:

                    Deputy Clerk

COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Humphreys and Senior Judge Coleman
Argued at Chesapeake, Virginia


TYRONE ALPHONSO WILSON
                                                MEMORANDUM OPINION[*] BY
v.        Record No. 1229-03-1               JUDGE SAM W. COLEMAN III
                                                    JANUARY 18, 2005
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Charles D. Griffith, Jr.,  Judge

Allan D. Zaleski (Weisberg & Zaleski, P.C., on briefs), for appellant.

Robert H. Anderson, III, Senior Assistant Attorney General
(Jerry W. Kilgore, Attorney General, on brief), for appellee.


        Tyrone Alphonso Wilson appeals his bench trial convictions for possession of cocaine with

the intent to distribute, possession of marijuana with the intent to distribute, possession of a firearm

while in possession of a controlled substance, and possession of a firearm by a convicted felon.

Although appellant presents nine separate questions in his brief, the questions raise three distinct

issues.  Specifically, he argues (1) the court improperly refused to consider any plea agreement,

(2) the trial judge improperly refused to recuse himself, and (3) the evidence was insufficient to

support his convictions.  For the reasons that follow, we reverse the convictions and remand for a

new trial.

PROCEDURAL HISTORY

        Appellant was arrested on December 5, 2001.  He was indicted in early 2002, and his

case was set for trial on July 16, 2002.  The case was scheduled to be heard by Judge Charles E.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Poston, but on the morning of trial, Judge Poston advised that he could not hear the case due to a medical appointment. Appellant's case was transferred to the hearing docket of Judge Charles D. Griffith, Jr. Although appellant had previously and repeatedly indicated he would be tried by the court, when he appeared before Judge Griffith, appellant pled not guilty and requested a jury trial. When questioned by Judge Griffith about the request, appellant's counsel, Allan Zaleski, explained appellant determined he wanted a jury trial "when the matter was transferred" to Judge Griffith. Zaleski admitted that "whenever a lawyer counsels with his client about whether its appropriate to try a matter with a judge or a jury, it's important to know who the judge is," and that he "cannot intelligently decide [whether to request trial by judge or jury without] know[ing] who the judge is." Judge Griffith granted appellant's request, continued the case, and, concluding Zaleski was "judge shopping," announced he would remove Zaleski from the court-appointed counsel list.

On July 25, 2002, Judge Marc Jacobson heard appellant's motion to suppress. Judge Jacobson denied the motion in an August 29, 2002 opinion letter.

Appellant was arraigned before Judge Everett A. Martin, Jr. on September 6, 2002. Zaleski announced appellant no longer wished to have a jury trial. Judge Martin expressed "concerns" about "awarding his judge shopping," but Judge Martin set the case for a bench trial on September 10, 2002. Zaleski acknowledged to Judge Martin that appellant understood "this case c[ould] go to anyone."

On September 10 appellant appeared for the scheduled trial at which Judge Griffith was again presiding. When the case was called Zaleski told the judge "we're very close to a plea agreement in this case." Judge Griffith responded that the trial was ready to proceed. The Commonwealth's attorney announced that she was ready to proceed, and Zaleski acknowledged that the defense was also ready. Thereafter, the following colloquy took place:

> [COMMONWEALTH'S ATTORNEY]: Before the court proceeds in this case further, it's my understanding that [appellant] would like to enter a plea of guilty. We don't have a plea agreement written out. We would ask the court to accept the plea. It calls for a total sentence of twenty years with four to serve.
>
> THE COURT: I'm sorry, but we're getting ready to start a trial. You-all have had plenty of time to negotiate. We're not doing any negotiations right now. We're starting a trial.
>
> MR. ZALESKI: You're rejecting the agreement? I would move –
>
> THE COURT: There is no agreement. This case is beginning trial. You are beyond your time to negotiate a plea agreement. We're starting a trial today.

The Commonwealth explained "once the court hears what this is, I think Your Honor will understand why there's these last minute plea negotiations." Judge Griffith conducted a brief hearing in chambers in which the Commonwealth expressed its reasons for offering the plea agreement. Afterwards, Judge Griffith stated "you seem to think . . . that somehow or another you have a right to stop everything and present a plea agreement and force me to consider a plea agreement. This trial is ready to begin. Your time for negotiating is over. It's time to start the trial." The following exchange then occurred:

> MR. ZALESKI: Is the court saying you will not consider any plea agreement at this time?
>
> THE COURT: You have no plea agreement.
>
> MR. ZALESKI: That is the court's position?
>
> THE COURT: We have started a trial. It's too late to negotiate.
>
> MR. ZALESKI: You are stating you will not consider any plea agreement at all?
>
> THE COURT: I'm not going to interrupt this trial and submit a plea agreement. That's correct. We are ready to start the trial.
>
> MR. ZALESKI: Your Honor, we're going to have a lunch break. We're going to have - - we're going to have certainly a break to go to the bathroom.

THE COURT: Are you suggesting, Mr. Zaleski, that once a trial begins that the court has to consider a plea agreement?

MR. ZALESKI: Yes, Your Honor. I can get the rules out. Let's look at it.

THE COURT: You're saying you can stop any trial and force the court to undertake a plea agreement if the court rejects it thereby obviating your entire trial? I think you are wrong about that. And we'll just have to let you challenge that. Let's go.

Zaleski then moved for Judge Griffith to recuse himself from the case, arguing the judge was biased against his client. Judge Griffith refused to recuse himself. He explained that after Judge Martin granted the request for a bench trial, Judge Griffith

approached . . . the chief judge of the court and explained to him what had occurred and that [Judge Griffith] felt it was appropriate that since the defendant had decided that he no longer wished a jury trial but that had initially asked for a jury trial and on advice of counsel specifically to avoid one of the members of this court, that the one thing it wasn't appropriate is for the defendant to avoid a particular courtroom solely by asking for a jury trial.

Judge Griffith further announced he was willing and able to impartially hear appellant's case.

## ANALYSIS

### I.

The procedure governing plea agreements is set forth in Rule 3A:8(c). In pertinent part, the Rule provides:

(c) Plea Agreement Procedure. -

(1) The attorney for the Commonwealth and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon entry by the defendant of a plea of guilty, or a plea of *nolo contendere*, to a charged offense, or to a lesser or related offense, the attorney for the Commonwealth will do any of the following:

(A) Move for *nolle prosequi* or dismissal of other charges;

(B) Make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the

- 4 -

understanding that such recommendation or request shall not be binding on the court;

(C) Agree that a specific sentence is the appropriate disposition of the case.

In any such discussions under this Rule, the court shall not participate.

(2) *If a plea agreement has been reached by the parties, it shall, in every felony case, be reduced to writing*, signed by the attorney for the Commonwealth, the defendant, and, in every case, his attorney, if any, *and presented to the court*. The court shall require the disclosure of the agreement in open court or, upon a showing of good cause, in camera, at the time the plea is offered. If the agreement is of the type specified in subdivision (c)(1)(A) or (C), the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider a presentence report. If the agreement is of the type specified in subdivision (c)(1)(B), the court shall advise the defendant that, if the court does not accept the recommendation or request, the defendant nevertheless has no right to withdraw his plea, unless the Commonwealth fails to perform its part of the agreement. In that event, the defendant shall have the right to withdraw his plea.

\* \* \* \* \* \* \*

(4) If the agreement is of the type specified in subdivision (c)(1)(A) or (C) and *if the court rejects the plea agreement*, the court shall inform the parties of this fact, and advise the defendant personally in open court or, on a showing of good cause, in camera, that the court will not accept the plea agreement. Thereupon, neither party shall be bound by the plea agreement. The defendant shall have the right to withdraw his plea of guilty or plea of *nolo contendere* and the court shall advise the defendant that, if he does not withdraw his plea, the disposition of the case may be less favorable to him than that contemplated by the plea agreement; *and the court shall further advise the defendant that, if he chooses to withdraw his plea of guilty or of nolo contendere, his case will be heard by another judge, unless the parties agree otherwise.*

(Emphasis added.) The parties informed the court that they had reached an agreement,

specifying that the agreement "call[ed] for a total sentence of twenty years with four to serve."

The Commonwealth's attorney "ask[ed] the court to accept the plea" but acknowledged they did

not "have a plea agreement written out." The trial judge announced that "[t]here is no agreement," that he would not consider any plea agreement, that it was "too late to negotiate," and that he was "not going to interrupt this trial and submit a plea agreement."

Although Rule 3A:8(c) indicates a plea agreement "shall, in every felony case, be reduced to writing," we have held that a defendant's "substantial rights were not implicated by the fact that the plea agreement was not in writing or disclosed in open court." Hairston v. Commonwealth, 16 Va. App. 941, 945, 434 S.E.2d 350, 352-53 (1993). "The purpose of Rule 3A:8(c)(2), a procedural rule, is to ensure that plea agreements are fully disclosed to both the trial court and the defendant." Id. at 945, 434 S.E.2d at 353. The fact that a plea agreement had not yet been reduced to writing did not prevent the parties from having reached an understanding as to the terms and conditions of an agreement, which the Commonwealth's attorney indicated they had done. Rule 3A:8(c)(2) expressly provides that a plea agreement exists when the parties have reached an agreement as to whether the Commonwealth's attorney will make a sentence recommendation, or specific sentence, or move for a *nolle prosequi* or dismissal of other charges as provided in subsection (c)(1)(A), (B), or (C) and thereafter "it shall . . . be reduced to writing . . . ." Thus, under the Rule a plea agreement exists when the parties have reached an agreement the terms of which comport with either subsection (A), (B), or (C) of the Rule. The record shows that the complete terms of the plea agreement had been reached and were orally presented to the trial court. Accordingly, the court erroneously concluded there was no plea agreement.

Likewise, we find no support for the court's conclusion that appellant was barred from presenting an agreement to the court and entering a guilty plea because the trial had already begun. While acknowledging that a plea of guilty is separate and distinct from a plea agreement, we note, "[t]he fact that the trial has begun has no effect on a defendant's constitutional right to

plead guilty." Graham v. Commonwealth, 11 Va. App. 133, 141, 397 S.E.2d 270, 274 (1990). Similarly, while not suggesting a defendant has a constitutional right to present a plea agreement, we find no bar to presenting a plea agreement after a trial has commenced. The Commonwealth's concern, expressed on appeal for the first time, that presenting a plea agreement after a trial has begun "might constitute [an] attempt" to force a judge to be removed from a case, is misplaced. The court need entertain only agreements that have been "reached by the parties." Therefore, a defendant in a criminal trial is unable to unilaterally force the court to consider a plea agreement, and require a judge to remove him or herself from the case in the event that judge rejected the agreement. Only if the defendant and the Commonwealth, as in this case, have reached an agreement, must the trial court consider it. See Rule 3A:8.

We hold the trial court erred by refusing to consider the proffered agreement, or any agreement predicated upon a guilty plea that the parties had reached prior to the court reaching a verdict. Although Judge Griffith had a legitimate concern about "judge shopping," Rule 3A:8 requires a trial judge to consider a plea agreement reached by the Commonwealth's Attorney and a defendant prior to the commencement of trial. Under Rule 3A:8 the court has the right and discretion to reject the terms or recommendations in a plea agreement, however, the court does not have the right to not consider an agreement reached between the parties or to treat an agreement as though none existed. Judge Griffith's concerns about "judge shopping" are a consequence of the jurisdictions' policy assigning judges and not a problem arising due to Rule 3A:8.

## II.

Appellant asserts "the trial judge should have recused himself because of perceived bias." He contends the trial judge "was biased as to his trial counsel."

Canon 3(C)(a) of the Canons of Judicial Conduct provides that "[a] judge shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

> The requirement of this Canon is clear; a judge must diligently avoid not only impropriety but a reasonable appearance of impropriety as well. Exactly when a judge's impartiality might reasonably be called into question is a determination to be made by that judge in the exercise of his or her sound discretion.

Davis v. Commonwealth, 21 Va. App. 587, 591, 466 S.E.2d 741, 743 (1996). Moreover, "[j]udges are presumed to be aware of the provisions of Canon 3." Id. "[W]hether a trial judge should recuse himself or herself is measured by whether he or she harbors 'such bias or prejudice as would deny the defendant a fair trial,' and is a matter left to the reasonable discretion of the trial court." Welsh v. Commonwealth, 14 Va. App. 300, 315, 416 S.E.2d 451, 459-60 (1992) (citations omitted).

Although the trial judge expressed his displeasure for Zaleski's perceived attempts at "judge shopping," the judge stated on the record, "I don't hold any ill will towards [Zaleski] for it. I don't think it's appropriate, and I took necessary action and that's done and that's history . . . ." Judge Griffith further explained: "I'm going to be fair. I can guarantee it. It has nothing to do with any personalities or anything . . . ." The record reveals Judge Griffith considered the issue presented. We find no abuse of discretion in his decision not to recuse himself on the basis of perceived bias. See Commonwealth v. Jackson, 267 Va. 226, 229, 590 S.E.2d 518, 520 (2004) (holding that "[i]n the absence of proof of actual bias, recusal is properly within the discretion of the trial judge"); Davis v. Commonwealth, 21 Va. App. 587, 590-91, 466 S.E.2d 741, 742-43 (1996) (trial judge's discretion to determine whether "impartiality might reasonably be questioned") (citing Canon 3(C) of the Canons of Judicial Conduct).

III.

Appellant contends the evidence at trial was insufficient to prove he possessed cocaine or marijuana, or that he was a convicted felon.

> Because we find grounds to reverse the case on the basis of [the court's failure to consider any plea agreement] and remand the case for a new trial, we address [appellant's] claim that the Commonwealth failed to present sufficient evidence [to support his conviction]. If the evidence adduced at trial was insufficient to convict [appellant], he is entitled to an acquittal [on that charge]; if he is so entitled, a remand for retrial would violate the Constitution's prohibition against double jeopardy.

Parsons v. Commonwealth, 32 Va. App. 576, 581, 529 S.E.2d 810, 812 (2000). "[A] full sufficiency analysis is required to satisfy the mandate of the Double Jeopardy Clause of the federal Constitution." Id. (citing Burks v. United States, 437 U.S. 1 (1978)); see Timbers v. Commonwealth, 28 Va. App. 187, 202, 503 S.E.2d 233, 240 (1998).

When sufficiency of the evidence is challenged on appeal, the judgment of the trial court is presumed correct. See Johnson v. Commonwealth, 12 Va. App. 391, 396, 404 S.E.2d 384, 387 (1991). We consider the evidence in the light most favorable to the Commonwealth, discarding all evidence offered by the accused that conflicts with that of the Commonwealth, and grant to the Commonwealth all inferences reasonably deducible from the evidence. See Norman v. Commonwealth, 2 Va. App. 518, 520, 346 S.E.2d 44, 45 (1986).

So viewed, the evidence proved that on December 5, 2001, the police executed a search warrant at 324 San Antonio Boulevard, Apartment B, in the City of Norfolk. Investigator N. Gardner entered the residence and encountered appellant and others. He observed appellant lying on the kitchen floor and told appellant to place his hands where the officer could see them. Appellant complied and announced that he had a gun. The police secured the weapon, a Ruger .45 caliber pistol. Investigator Payne searched appellant and found keys, a holster, and $1,755 in currency on his person.

Detective M. Joseph screened the cars in the residence's driveway with a narcotics dog. The dog alerted at a late model silver Cadillac. Inside the car the police found narcotics. The dog also alerted at another vehicle in the driveway. Inside that car, Joseph found money and marijuana. The dog then alerted on a third vehicle outside the residence, a burgundy van. Joseph found cocaine in the van secreted behind a door panel. A further search of the van revealed another hidden compartment. A device in the back of the van operated the secret compartments. The police found a Ruger .45 caliber magazine containing rounds inside the van.

In the residence, the police recovered a bag containing cocaine and a nine-millimeter loaded pistol in close proximity to each other on the living room floor. The kitchen contained six bags holding smaller bags of marijuana in a cabinet above the stove. Other cabinets contained packaging paraphernalia including small baggies, some with corners cut off, and scales with cocaine residue. A large bag in a bedroom closet contained seven bails of green leafy material.

The house was sparsely furnished with only two couches, a television and a deflated air mattress. No clothes or personal effects were in the residence, and the kitchen was devoid of food or cooking implements with the exception of a cast iron skillet. Investigator D. Barber, during his expert testimony, indicated such skillets are commonly used to "cook" cocaine, creating crack cocaine. Barber also testified the amount of cash appellant carried was consistent with drug distribution. Furthermore, the quantity of cocaine and marijuana located at the scene was inconsistent with personal use. The cocaine recovered from the van had a street value of $350,000. The cocaine found in the house and the cocaine found in the van had similar unusually high purity levels.

The green substance in the bedroom was imitation marijuana. Barber stated that dealers of drugs sometimes sell fake narcotics.

One of the keys appellant carried opened the van from which the cocaine had been recovered. Appellant was the only person present at the house in possession of keys to that vehicle. The magazine in the van matched the pistol appellant carried.

Possession Of Drugs

Appellant argues the Commonwealth failed to establish he possessed the drugs located in the house or in the van.

"The Commonwealth may prove possession of a controlled substance by showing either actual or constructive possession." Barlow v. Commonwealth, 26 Va. App. 421, 429, 494 S.E.2d 901, 904 (1998).

> To support a conviction based upon constructive possession, "the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance and that it was subject to his dominion and control."

Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986) (citation omitted). "The Commonwealth is not required to prove that there is no possibility that someone else may have planted, discarded, abandoned or placed the drugs . . . ." Brown v. Commonwealth, 15 Va. App. 1, 10, 421 S.E.2d 877, 883 (1992) (*en banc*). "Although mere proximity to the contraband is insufficient to establish possession, it is a factor that may be considered in determining whether a defendant possessed the contraband. Ownership or occupancy of the premises on which the contraband was found is likewise a circumstance probative of possession." Archer v. Commonwealth, 26 Va. App. 1, 12, 492 S.E.2d 826, 832 (1997). "Moreover, 'the possession need not be exclusive. The defendant may share [drugs] with one or more.'" Barlow, 26 Va. App. at 429, 494 S.E.2d at 905 (quoting Ritter v. Commonwealth, 210 Va. 732, 741, 173 S.E.2d 799, 805-06 (1970)).

- 11 -

Here, the evidence disclosed more than occupancy of the premises.  It showed that the cocaine in the living room was in plain view.  Appellant was present in the residence when the officers entered.  See Gillis v. Commonwealth, 215 Va. 298, 208 S.E.2d 768 (1974).  The residence contained little furniture and no food or cooking implements and appeared to be used primarily for the packaging and distribution of drugs.  Barber testified the residence was very small.  The police located a surveillance system in the kitchen along with a large quantity of marijuana.  Appellant possessed a weapon and a large amount of cash at the time the police entered the residence.  Appellant was the only member of the group who carried a key to the van containing the large amount of cocaine similar to the cocaine located in the residence.  An ammunition magazine which fit the gun appellant carried was also in the van.  Based upon the circumstances disclosed by the evidence, the trial court was justified in inferring that appellant had dominion and control of the contraband located in the house and in the van and was, therefore, in constructive possession of it.

### Prior Felony Conviction

The Commonwealth introduced a prior certified transfer order from the City of Portsmouth indicating that appellant had been convicted for burglary and that sentencing proceedings were to be transferred to the Norfolk Juvenile and Domestic Relations District Court.  The Commonwealth also introduced the sentencing order from that court describing the sentence imposed for a burglary conviction.  The records were certified and authenticated by the Norfolk Juvenile and Domestic Relations District Court.  Appellant asserts the documents failed to establish he was a convicted felon.

The Norfolk court's attestation proclaims that each document is "a true copy of a record in the above-named court . . . ."  The documents certified were part of the record of the Norfolk court and therefore within the knowledge of that court, as required by Code § 8.01-391.

- 12 -

Appellant's hearsay objection is without merit, and the trial court properly admitted the documents.

Furthermore, the records, although not containing a conviction order, demonstrate appellant was convicted of a felony in the Portsmouth court. The transfer order recites that appellant was "th[at] day found guilty" of violating Code § 18.2-89, a felony. Similarly, the corresponding record from the Norfolk court lists the disposition of the burglary charge. The documents, viewed together, provided the court with a sufficient basis for concluding appellant was a convicted felon.

Thus, the court had sufficient evidence to conclude that appellant was a convicted felon and that he possessed the contraband. The court's conclusion was not plainly wrong.

For the reasons stated in this opinion, we reverse the convictions and remand for a new trial if the Commonwealth be so advised.[1]

Reversed and remanded

---

[1] As to whether a new trial might violate the Constitution's Double Jeopardy Clause, see Parsons, 32 Va. App. at 581, 529 S.E.2d at 812.

Benton, J., concurring, in part, and dissenting, in part.

I concur in the parts of the opinion styled PROCEDURAL HISTORY and ANALYSIS (I). I agree that the trial judge erred by refusing to consider the proffered plea agreement and that, for this reason, Wilson's case ordinarily should be remanded under Rule 3A:8. I would also hold, however, that the trial judge should have granted Wilson's motion that the judge recuse himself from presiding over the trial. In addition, because I believe the evidence was insufficient to prove that Wilson constructively possessed the drugs seized, I would reverse the convictions and dismiss the indictments concerning the drugs.

## I.

On July 16, 2002, when this case was set for trial, the clerk called the case and asked Wilson whether he wanted a trial by jury or a bench trial. Wilson said he wanted a jury trial. The trial judge noted that a jury could not be secured that day, said he would arraign Wilson, and ruled the trial would begin the following day. As the clerk began the arraignment, the trial judge interrupted and said Wilson's attorney had "caused this problem." He then announced that he was "going to relieve [Wilson's attorney] . . . from [his] responsibilities in this case." When he learned that the attorney was not court appointed but retained, he ruled: "I am removing you from the court appointed list, effectively immediately . . . . I am not going to have a court-appointed lawyer who practices that way in this court building." He then continued the case noting that "the defendant's constitutional right to a jury trial overrides any shenanigans that the attorney may participate in." In denying Wilson's later motion that he recuse himself from the trial, the judge said that he did not "hold any ill will toward [Wilson's attorney]" and that he was "going to be fair."

"A judge shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Canon 3(C) of the Canons of Judicial Conduct. "The requirement of

- 14 -

this Canon is clear; a judge must diligently avoid not only impropriety but a reasonable appearance of impropriety as well." Davis v. Commonwealth, 21 Va. App. 587, 591, 466 S.E.2d 741, 743 (1996).

I would hold the trial judge's actions would convey to a reasonable person a belief he would not receive a fair trial. The judge ruled in the presence of Wilson that the attorney had used "shenanigans" when advising Wilson of his constitutional right to seek a jury trial. We held however, in Jones v. Commonwealth, 24 Va. App. 636, 484 S.E.2d 618 (1997), a case that arose from this same circuit court, that a trial judge may not rely upon a scheduling order for determining waiver of a jury trial when the record does not show that the defendant had manifested by some deliberate action an election to forego his right to a jury trial. Id. at 640-41, 484 S.E.2d at 620-21. See also Robinson v. Commonwealth, 36 Va. App. 1, 548 S.E.2d 227 (2001); Herbert v. Commonwealth, 33 Va. App. 506, 534 S.E.2d 369 (2000). As punishment for the attorney's advice to Wilson to invoke his right to a jury trial, the trial judge sought to remove the attorney from his representation of Wilson and, when that could not be achieved, removed the attorney from the list of eligible court-appointed attorneys. Later, the judge made an affirmative effort to solicit the re-assignment of this case to his courtroom so that he could conduct the trial.

As indicated in the majority opinion, the trial judge later refused to accept a plea agreement as requested by Wilson and the Commonwealth. The record further establishes that the sentence imposed on Wilson exceeded the sentencing guidelines and exceeded the sentences imposed upon the lessee of the apartment (where the marijuana was hidden) and the owner of the van (where the cocaine was hidden), both of whom were arrested in the residence. Although Wilson represents on brief that his sentence exceeded those of all the defendants, the sentences of the others are not disclosed on the record.

- 15 -

I would hold that these circumstances establish that the trial judge abused his discretion in denying Wilson's motion that the judge recuse himself.

II.

The evidence did not prove that Wilson actually possessed any of the marijuana or cocaine.

> To support a conviction based upon constructive possession, "the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance and that it was subject to his dominion and control." . . . Mere proximity to a controlled drug is not sufficient to establish dominion and control.

Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986) (citation omitted). "[W]here, as here, a conviction is based on circumstantial evidence, 'all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.'" Garland v. Commonwealth, 225 Va. 182, 184, 300 S.E.2d 783, 784 (1983) (citation omitted). Proof of suspicious circumstances, "no matter how strong, is insufficient to sustain a criminal conviction." Stover v. Commonwealth, 222 Va. 618, 624, 283 S.E.2d 194, 197 (1981) (citing Thomas v. Commonwealth, 187 Va. 265, 271-72, 46 S.E.2d 388, 391 (1948)).

I agree that the circumstances Wilson was in were suspicious. He was seized in an apartment that contained marijuana and cocaine. Wilson had a large amount of cash and a weapon. Wilson had in his possession the key to a van that concealed $350,000 worth of cocaine and that contained a Ruger .45-caliber magazine, which fit the weapon Wilson had in his possession. While these suspicious circumstances were not trifles, the Commonwealth failed to prove, beyond mere suspicions, that Wilson was aware of the cocaine in the van (a vehicle that he did not own or occupy), that he was aware of the marijuana located in a closed kitchen cabinet

- 16 -

(in an apartment he did not own or lease), and that he exercised the kind of dominion or control, commensurate with possession, over any of the marijuana or cocaine.

To sustain convictions for constructive possession, the Supreme Court and we have required much more compelling evidence than the circumstance here. "The evidence must go further than create a mere suspicion or probability of guilt. There must be credible evidence to arrive at a conclusion of guilt beyond a reasonable doubt." Rich v. Commonwealth, 198 Va. 445, 452, 94 S.E.2d 549, 554 (1956). Thus, for constructive possession, the evidence must be sufficient to prove beyond a reasonable doubt that the defendant was both aware of the presence and character of the substance and that he exercised dominion and control over the substance commensurate with actual possession. See e.g., Drew, 230 Va. at 474, 338 S.E.2d at 846 (holding that the evidence was insufficient to prove constructive possession by the defendant where it established, at most, that he resided at the residence and was near the residence the night the cocaine was seized from it); Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984) (proving that drugs were found secreted in the defendant's house was insufficient to prove he constructively possessed the drugs); McNair v. Commonwealth, 31 Va. App. 76, 86, 521 S.E.2d 303, 308 (1999) (holding that "'[s]uspicious circumstances, including proximity to a controlled drug, are insufficient to support a conviction [for constructive possession]'"); Nelson v. Commonwealth, 17 Va. App. 708, 711, 440 S.E.2d 627, 628 (1994) (arresting the defendant in a motel room registered to another was insufficient to prove he knew that cocaine was on the premises or that he exercised any control over the cocaine, where "[c]ocaine was secreted in a toothbrush holder in the [motel] bathroom, and a small amount was found on the carpet under the bed"); Burchette v. Commonwealth, 15 Va. App. 432, 435, 425 S.E.2d 81, 83 (1992) (holding that ownership or occupancy of a vehicle where drugs were located was insufficient to establish constructive possession); Behrens v. Commonwealth, 3 Va. App. 131, 135, 348 S.E.2d 430, 432

(1986) (holding that evidence was suspicious, but insufficient to establish constructive possession, when drugs were found in a hotel room registered to defendant and defendant was not seen in proximity to drugs).

This concern for a conviction based on suspicion is reflected in the statutory admonition that neither proximity to nor a proprietary interest in the premises containing the illegal substance is sufficient to convict -- proof of "ownership or occupancy of premises or vehicle upon or in which a controlled substance was found shall not create a presumption that such person either knowingly or intentionally possessed such controlled substance." Code § 18.2-250. Notably, both factors were absent with regard to the cocaine found in the van. Wilson was neither the owner or occupant of the van nor was he in the proximity of the van during the seizure. Wilson was in the apartment, and the van was parked some distance away. The trial judge erred in concluding, even in the absence of these factors, that Wilson constructively possessed the drugs in the van.

As a comparison to our cases demonstrates, the circumstances do not establish Wilson's guilt beyond a reasonable doubt. For example, in Burchette, the defendant owned the vehicle, where police found his wallet, cell phone, pager, and bills in his name, in addition to marijuana packaged for distribution. Unlike in this case, where the cocaine was elaborately hidden in the vehicle, some of the marijuana discovered in Burchette's vehicle was in plain view. 15 Va. App. at 435, 425 S.E.2d at 83. The police also observed Burchette walking by the vehicle, which was parked in front of his home, shortly before he drove away in another vehicle. Id. We held that the evidence amounted to mere suspicion only, and we reasoned that because the Commonwealth failed to negate the reasonable inference that someone other than Burchette had used the car and placed the marijuana there, the evidence failed to support the conviction. Id. at 439, 425 S.E.2d at 86.

Wilson's possession of the key, coupled with the officer's discovery of the magazine in the van, does not establish Wilson's awareness of the cocaine concealed in hidden compartments. Wilson did not own the van. Indeed, no evidence proved he had been inside the van. The Supreme Court has also held that possession of a key to a location where drugs are located is not sufficient to establish either awareness or dominion and control. See Clodfelter v. Commonwealth, 218 Va. 619, 238 S.E.2d 820 (1977). This is true even when the defendant was the sole occupant of the place at issue. Id. at 621, 238 S.E.2d at 821. In Clodfelter, the defendant, like Wilson, had the key to the place where drugs were located (in Clodfelter's case, a hotel room). Id. Unlike Wilson, who had the key but was not the owner, Clodfelter was the only registered guest in that hotel room and was, thus, both owner and occupant. Despite this more compelling evidence, the Supreme Court reversed his conviction, finding that "while the evidence created a strong suspicion of guilt, it fell short of proving possession beyond a reasonable doubt." Id. at 623, 238 S.E.2d at 822. The Court made the following pertinent observations about the suspicious circumstances:

> Distilled to its basic elements, the evidence, and reasonable inferences therefrom, show that Clodfelter rented the hotel room and that he had deposited some of his personal effects there. The evidence also shows that Clodfelter, when questioned by the police, gave a false identity. Certainly this evidence creates a strong suspicion of guilt, but it falls short of showing beyond a reasonable doubt that the drugs found in the hotel room were ever actually or constructively possessed by Clodfelter with an awareness of their character.

Id. at 624, 238 S.E.2d at 822. As Burchette and Clodfelter demonstrate, Wilson's possession of the key to the van, and the presence of the magazine inside the van, do not establish beyond a reasonable doubt that Wilson was aware of the cocaine or that he exercised any measure of dominion and control over the hidden cocaine.

In addition to this failure of proof, the Commonwealth also failed to disprove reasonable hypotheses that flowed from the evidence that were "inconsistent with guilt." Despite extensive surveillance, the police did not testify about when or how Wilson arrived at the apartment, whether he drove the van, or for what purpose he was at the apartment. Because the cocaine was elaborately concealed in a hidden compartment, where it was discovered only after a drug sniffing dog alerted and an extensive search occurred, the evidence left entirely within the realm of reasonable possibility that the owner of the van, Javone McCantz, who was also seized during the raid at the apartment, alone possessed the cocaine and alone knew of its existence. The evidence does not negate the reasonable hypothesis that Wilson had the key for a purpose unrelated to the cocaine. No evidence even negated the inference that, if Wilson had driven the van, he had done so without being aware of the hidden cocaine. Indeed, no evidence proved Wilson had been in the van. Like Clodfelter and Burchette, the discovery of the .45-caliber Ruger magazine at most suggests that Wilson *may* have been in the van at some point in the past. We do not know when, because the Commonwealth's evidence failed to prove this critical fact.

The evidence was similarly lacking that Wilson was aware of the presence of the marijuana in the kitchen cabinet or that he exercised any measure of dominion and control over it. Police seized the marijuana from a closed kitchen cabinet. The only fact that was proved to suggest Wilson was aware of the marijuana was his mere presence in the apartment. The trial judge was not privileged to assume from this fact that Wilson knew of the presence of the marijuana. As the Supreme Court held in Huvar v. Commonwealth, 212 Va. 667, 187 S.E.2d 177 (1972), it is impermissible for a fact finder to infer awareness and control of drugs simply because a suspect is present at a location where drugs were found. In Huvar, the defendant was arrested in the bathroom of an apartment; drugs were scattered in plain view in other rooms, the apartment smelled of marijuana, and the defendant appeared to have been using drugs. 212 Va.

at 668, 187 S.E.2d at 177-78. Despite the "suspicious circumstances," the Court held that the defendant did not have constructive possession of the drugs.

> It is the theory of the Commonwealth that the police interrupted a "pot party." One could reasonably reach this conclusion from the evidence. However, the mere presence of defendant at the party is not sufficient to convict him of actual or constructive possession of the drugs that were found there. It was not his apartment. Those present were not shown to have been his guests or there at his invitation. None of the prescription containers in which some of the drugs were found bore his name on their labels. He made no statement, committed no act and indulged in no conduct from which the inference could be fairly drawn that he possessed or controlled the drugs which the police found.

Id. at 668, 187 S.E.2d at 178.

Similarly, in Drew, the Supreme Court reversed a conviction for constructive possession where a search of a residence revealed the defendant's checkbook, bank statement, telephone bill, driver's license, vehicle registration, credit union voucher, and a large amount of cocaine and drug paraphernalia. Each documentary item listed the residence as the defendant's address. In addition the evidence proved the police saw the defendant standing near the residence. 230 Va. at 472, 338 S.E.2d at 845. Despite these suspicious circumstances, the Supreme Court held the evidence was insufficient to establish constructive possession: "At most, the evidence establishes that [the defendant] resided at . . . and . . . was near the residence the night the cocaine was seized. This is insufficient to prove constructive possession by the defendant." Id. at 474, 338 S.E.2d at 846.

In comparison to both Huvar and Drew, the evidence against Wilson was weaker still. He was not the lessee or the owner. The lessee was actually present in the apartment with Wilson and other people. The marijuana was not in plain view; it was hidden in the kitchen cabinet. The evidence failed to draw any connection, beyond speculation, between Wilson's money and the marijuana. The Commonwealth simply failed to provide evidence which tended

to prove Wilson was aware of the presence of marijuana, beyond the suspicious circumstances. And this proof is required beyond a reasonable doubt to establish his guilt.

Similarly, Wilson was not in proximity of the hardball of cocaine when the police entered the apartment. He was in the kitchen; the hardball of cocaine was in the living room; the hardball of cocaine did not have his fingerprints. Moreover, unlike in Huvar, where the odor of marijuana was prevalent and drugs were scattered about, the presence of this one item of cocaine, which was in plain view but in a room where Wilson was not, certainly cannot provide the basis for the fact finder to conclude Wilson was aware of the presence and character of a single hardball of cocaine.

The essence of constructive possession for drugs is control, which must be proven beyond a reasonable doubt. If the Supreme Court and we could not conclude that the defendants in Burchette, Huvar, Behrens, and other cases constructively possessed drugs, we cannot sustain Wilson's conviction on weaker evidence. Our case law has been clear on the law of constructive possession and has guarded against "ad hoc judicial judgments against those often identified by chance discovery, and prosecuted by official whimsy." Charles H. Whitebread and Ronald Stevens, Constructive Possession in Narcotics Cases:  To Have and Have Not, 58 Va. L. Rev. 751, 751 (May 1972). This record contains no "evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance and that it was subject to his dominion and control." Powers, 227 Va. at 476, 316 S.E.2d at 740. In short, the evidence in this case is consistent with Wilson present at the apartment as a visitor; it failed to prove he possessed any of the drugs.

For these reasons, I would hold that the evidence was insufficient to support the drug related convictions. Thus, I would reverse the convictions and dismiss all indictments except possession of a firearm by a felon.

Humphreys, J., concurring, in part, and dissenting, in part.

I agree with the majority's analysis and conclusion that the trial judge was not required to recuse himself. I also agree that the Commonwealth presented sufficient evidence to support Wilson's convictions for possession of cocaine, possession of marijuana, possession of a firearm while in possession of a controlled substance, and possession of a firearm by a convicted felon.

I dissent, however, from the majority's conclusion that the trial court improperly refused to consider the proffered plea agreement. I agree with the majority's implicit holding that this is not a matter of constitutional import in that the trial court's failure to consider a plea agreement after the commencement of trial is not equivalent to depriving a criminal defendant of his constitutional right to plead guilty. However, because the "plea agreement" in this case had not been reduced to writing, I would hold that the trial judge was not required, under the plain language of Rule 3A:8(c), to consider the plea agreement because there was, in fact, no plea agreement for him to consider. Because the parties had not reduced the plea agreement to writing, I would hold that the decision of whether to consider the proposed plea agreement therefore rested in the discretion of the trial court. And, because there is no indication that the trial judge abused his discretion, I would affirm Wilson's convictions.

I.

Under Article I, Section 8 of the Virginia Constitution, a criminal defendant has the constitutional right to plead guilty to the whole of an indictment. See Graham v. Commonwealth, 11 Va. App. 133, 139, 397 S.E.2d 270, 273 (1990).[2] Also, "[t]he fact that the

---

[2] In contrast, "[t]he United States Constitution does not confer upon a criminal defendant an absolute right to have his guilty plea accepted by the court." Graham, 11 Va. App. at 136, 397 S.E.2d at 272; see also Santobello v. New York, 404 U.S. 257, 262 (1971) (noting that, because "[t]here is, of course, no absolute right to have a guilty plea accepted," the "court may reject a [guilty] plea in exercise of sound judicial discretion"); North Carolina v. Alford, 400 U.S. 25, 38 n.11 (1970) ("A criminal defendant does not have an absolute right under the Constitution to have his guilty plea accepted by the court, although the States may by statute or

- 23 -

trial has begun has no effect on a defendant's constitutional right to plead guilty." Id. at 141, 397

S.E.2d at 274.  Thus, "[t]he fact that a plea is tendered mid-trial is irrelevant to the analysis

regarding a defendant's right to enter a plea of guilty," id., and "a defendant may [therefore]

plead guilty at any time prior to the return of the jury's verdict concluding the guilt phase of a

bifurcated trial."  Daye v. Commonwealth, 21 Va. App. 688, 692, 467 S.E.2d 287, 289 (1996).[3]

Although a criminal defendant does have a right under the Virginia Constitution to enter

an unconditional guilty plea, this right does not extend further in constitutional terms to also

encompass the right to halt a trial in progress or about to commence in order to enter a guilty

plea conditioned on the terms of an unwritten plea agreement.  As noted by the United States

Supreme Court,

> [a] plea bargain standing alone is without constitutional
> significance; in itself it is a mere executory agreement which, until
> embodied in the judgment of a court, does not deprive an accused
> of liberty or any other constitutionally protected interest.  It is the
> ensuing guilty plea that implicates the Constitution.

Mabry v. Johnson, 467 U.S. 504, 507-08 (1984).[4]

As the majority recognizes, although a guilty plea is an integral part of any plea

agreement, a plea of guilty is therefore separate and distinct from a plea agreement.  See United

States v. Hyde, 520 U.S. 670, 677 (1997) (interpreting the federal equivalent to Rule 3A:8 and

holding that the Ninth Circuit erred when it "equated acceptance of the guilty plea with

---

otherwise confer such a right." (citation omitted)); United States v. Benson, 640 F.2d 136, 139 (8th Cir. 1981) ("[T]here is no constitutional right to plead guilty.").

[3] Notably, however, neither Graham nor Daye involved the entry of a plea agreement. Rather, both cases dealt with a defendant's request to change a "not guilty" plea into an *unconditional* "guilty" plea.  Indeed, whether a trial court is required to consider a plea agreement subsequent to the commencement of a trial appears to be a case of first impression within the Commonwealth.

[4] In fact, Wilson's plea agreement, as presented, had not yet been reduced to writing or executed by the appropriate parties, and so could not even be considered an "executory" agreement.

- 24 -

acceptance of the plea agreement, and deferral of the plea agreement with deferral of the guilty plea," explaining that a guilty plea and a plea agreement are only "'bound up together' in the sense that a rejection of the agreement simultaneously frees the defendant from his *commitment* to plead guilty" (emphasis added)). Accordingly, Wilson's right to plead guilty was not inseparable from his plea agreement. Rather, at most, Wilson's statement that the parties had reached a plea agreement evidenced his conditional *intent* to plead guilty – it did not constitute the guilty plea itself.

Here, then, the trial court's decision to disregard the orally proffered plea agreement did not preclude Wilson from pleading guilty. It merely prevented him from doing so in accordance with the terms of the agreement he had presumably reached with the Commonwealth's attorney. Accordingly, Wilson's constitutional right to plead guilty was neither implicated nor violated under the circumstances of this case.

II.

According to Rule 3A:8(c), "[t]he attorney for the Commonwealth and the attorney for the defendant . . . may engage in discussions with a view toward reaching a[] [plea] agreement." And, once a plea agreement has been reached, the trial court may consider that agreement if it has been "reduced to writing, signed by the attorney for the Commonwealth, the defendant, and . . . his attorney, . . . and presented to the court." Id.; see also Wolfe v. Commonwealth, 1 Va. App. 498, 499, 339 S.E.2d 913, 914 (1986) ("This rule [] requires that a plea agreement be reduced to writing, signed by the attorney for the Commonwealth, the defendant and his attorney, and presented in open court."). As noted by the majority, the purpose of Rule 3A:8(c), which is procedural rather than substantive in nature, "is to ensure that plea agreements are fully disclosed to both the trial court and the defendant." Hairston v. Commonwealth, 16 Va. App. 941, 945, 434 S.E.2d 350, 353 (1993).

Wilson correctly points out that the terms of Rule 3A:8(c) contain no time limitations restricting the parties' ability to enter into plea negotiations.[5] However, by the plain terms of Rule 3A:8(c)(2), a plea agreement in a felony case must be reduced to writing. See Rule 3A:8(c)(2) ("If a plea agreement has been reached . . . it *shall*, in every felony case, *be reduced to writing* . . . ." (emphasis added)). If this has not occurred, then there is no plea agreement for a court to consider within the meaning of the Rule. Cf. Commonwealth v. Sandy, 257 Va. 87, 91, 509 S.E.2d 492, 493-94 (1999) (holding that this Court "erred in concluding that the defendant and the Commonwealth's Attorney entered into a plea agreement in accordance with Rule 3A:8(c)(1)(C)(2)" because "the agreement in this case was never approved by the circuit court as required by Rule 3A:8").[6]

---

[5] Because there was no "plea agreement" in this case, I need not address the issue of whether the trial court is required to consider a plea agreement that has been properly reduced to writing, signed, and presented to the court after trial has commenced. I do note, however, that I have found no authority supporting the majority's bare assertion that, because there is "no bar to presenting a plea agreement after a trial has commenced," the trial court "must" consider that plea agreement. It is not clear from the permissive language of Rule 3A:8, nor, prior to this case, have we explicitly held, that a trial court is ever *required* to consider a plea agreement. Cf. United States v. Stamey, 569 F.2d 805, 806 (4th Cir. 1978) (holding that the trial court did not err when it accepted the defendant's guilty plea without first considering the substance of a proffered plea agreement, reasoning that the federal rules "permit[] each federal court to decide for itself the extent to which it will permit plea negotiations," and concluding that "[n]o court is compelled to permit any plea negotiations at all" (internal quotations omitted)); see also United States v. Petty, 600 F.2d 713, 713 (8th Cir. 1979) ("[A] district court is under no duty to consider a negotiated plea agreement."); In re Yielding, 599 F.2d 251, 252-53 (8th Cir. 1979) (denying writ of mandamus where petitioner sought to compel the district court to consider a negotiated plea agreement, reasoning that "the district court was under no duty to [do so]"). According to Rule 3A:8, the parties must present finalized plea agreements to the Court, but the Rule contains no language mandating that the plea agreement actually be taken into consideration. Rather, the Rule indicates only that the court "*may* accept or reject the agreement." Thus, even if the parties had reached a plea agreement, the trial court's refusal to consider that agreement did not necessarily violate Rule 3A:8, nor was it automatically tantamount to an abuse of discretion.

[6] Cf. United States v. Pierre, 120 F.3d 1153, 1155 (11th Cir. 1997) (holding that the defendant entered an unconditional rather than conditional guilty plea under Fed. R. Crim. P. 11 because "the plea was not preserved in writing, as required by Rule 11(a)(2)," reasoning that the requirement that the agreement be in writing was intended to ensure that the government had given its express consent to the terms of the conditional plea); United States v. Fischetti, 475 F. Supp. 1145, 1151 (D.N.J. 1979) (where "both the government and the defendants insist that they

Here, Wilson freely admits that the terms of the plea agreement were not reduced to writing. Thus, Rule 3A:8(c) is not implicated here. Rather, because the requirements of Rule 3A:8 had not been met, I would hold that the trial judge correctly found that there was no "plea agreement" for him to consider.

Moreover, the majority erroneously concludes that "the complete terms of the plea agreement were orally presented to the trial court." To the contrary, the record reflects that the only information available to the trial court was that Wilson's counsel stated to the court that "we're very close to a plea agreement," and the prosecutor responded that "we don't have a plea agreement written out . . . . It calls for a total sentence of twenty years with four to serve." In my view, these statements, taken together, fall short of representing a meeting of the minds sufficient to evidence any sort of agreement. Moreover, the parties did not proffer any of the other necessary specifics of a proper plea agreement: for example, whether Wilson was pleading guilty to all or some of the charges, to one or more lesser or reduced offenses, whether he was entering a plea of guilty or *nolo contendere*, or whether other charges would be dismissed, reduced, or simply not pursued.[7] The majority's holding, by forcing the trial courts to halt proceedings in progress to consider an orally proffered "plea agreement" as nebulous as the one

---

have an agreement and wish to have it recognized," but the plea agreement had not been placed in writing, the court informed the parties that it would only consider written plea agreements, noting the "importance of employing routine requirements of signed memoranda as a simple and obvious tool to provide certainty and avoid controversy," and further reasoning that "[i]mportant transactions such as property contracts, deeds, mortgages and wills have long been required to be put in writing," and that "[a]greements in respect to pleas affecting a person's constitutional rights and liberty are hardly of lesser importance").

[7] This information is of crucial importance because, for example, a trial court has the right to refuse a plea of guilty to a lesser-included offense, but is required to accept a plea of *nolo contendere* to the offense charged. See Code § 19.2-254 ("The court may refuse to accept a plea of guilty to any lesser offense included in the charge upon which the accused is arraigned, but . . . the court shall not refuse to accept a plea of *nolo contendere*."); see also Graham, 11 Va. App. at 137, 397 S.E.2d at 272 ("The only discretion given to a court by the statute is the right to refuse a plea of guilty to any lesser offense included in the charge upon which the accused is arraigned.").

at issue here, undermines the clear underlying purpose of Rule 3A:8(c) – "to ensure that plea agreements are *fully* disclosed to both the trial court and the defendant." Hairston, 16 Va. App. at 945, 434 S.E.2d at 353 (emphasis added).

For these reasons, I disagree with the majority's conclusion that the parties had reached a "plea agreement" within the meaning of Rule 3A:8. Rather, because the terms of that agreement had been neither reduced to writing nor fully presented to the trial court, I would hold that there was no "plea agreement" for the trial court to consider.

### III.

At no point prior to the verdicts did Wilson actually change his "not guilty" plea to a "guilty" plea. Rather, on September 10, 2002, after extensive pretrial maneuvering that can only be described as a blatant, albeit unsuccessful, attempt at "judge shopping," Wilson merely advised the court that the parties were "very close" to a last-minute plea agreement. Even elevating this statement to the status of a motion to suspend the proceedings pending further negotiations between the parties, "as a general proposition, a trial court is given discretion in deciding whether to grant an untimely motion, taking into consideration whether the motion was designed to impede the efficient administration of criminal justice." Graham, 11 Va. App. at 141, 397 S.E.2d at 274. Here, in light of the defendant's history of "judge-shopping" and the posture of Wilson's case on September 10, 2002, I would hold that the trial court did not abuse its discretion when it refused to stop the trial for the purpose of entertaining the defendant's last-minute motion for consideration of a purported, unwritten plea agreement.

### IV.

For these reasons, I would hold that the trial court did not err when it refused to consider the orally proffered plea agreement. Because I would therefore affirm the judgment of the trial court, I respectfully dissent from that portion of the majority's analysis.

- 28 -